SUPERIOR OIL CO. *et al. v.* RICHMOND *et al.*

(Division A.   March 18, 1935.   Suggestion of Error Overruled, April 29, 1935.)

[159 So. 850.   No. 31571.]

408

**U. B. Parker,** of Wiggins, for appellant, Superior Oil Company.

410

**Carl Marshall,** of Gulfport, for appellant, Standard Brands, Inc.

English Lindsey and Bidwell Adam, both of Gulfport, for appellees.

414

Watkins & Eager, of Jackson, for appellant, Superior Oil Company, on suggestion of error.

416

Argued orally by **Carl Marshall** and **U. B. Parker**, for appellants, and by **Bidwell Adam** and **English Lindsey**, for appellees.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a judgment against the Superior Oil Company and the Standard Brands, Inc., for fifteen thousand dollars rendered in an action by the widow and children of Joe Richmond, deceased, for damages said to have accrued to them because of the death of Joe Rich-

mond, which, it was alleged, was caused by the negligence of the appellants.

Appellants complain of the refusal of the court below to direct the jury to return a verdict in their favor.

The facts out of which the claim for damages grew are, in substance, as follows: The Superior Oil Company has a bulk sales station in the town of Wiggins, at which it stores, for sale and distribution, petroleum products, all of a highly inflammable nature, in several large metal tanks. The plant of this company is situated in a thickly populated section of the town, there being in the immediate vicinity thereof a number of dwelling and business houses, all of which would be threatened by fire of any considerable proportion on the Superior Oil Company's premises, among which are houses owned by the Standard Brands, Inc. The Superior Oil Company receives its petroleum products from a railroad company which delivers them in tank cars placed on a spur track near the Superior Oil Company's storage tanks, from which the company pumps the products into these storage tanks. This is done by means of a metal pipe extending from the tank car to the storage tank and operated by a pump inclosed in a small pump house situated about ten feet from one of these storage tanks. The power for the operation of this pump is from an electric motor in the pump house, in which there is also an electric switch, by means of which the electric current is turned onto and off from the motor. This switch was incased in a metal box, but the jury was authorized to find that (1) this box did not prevent gasoline fumes from coming in contact with the switch, and (2) the switch when turned off and on would emit electric sparks.

The town of Wiggins maintains a fire department, consisting of the necessary equipment therefor in charge of and under the direction of a fire chief, who is assisted by volunteers when putting out fires. On the occasion

in question, the railroad company placed a tank car, containing between seven and eight thousand gallons of gasoline, at the proper place on its spur track, near the storage tanks. The agent of the Superior Oil Company in charge of its plant connected this tank car with one of its storage tanks by the metal pipe used therefor, for the purpose of transferring the gasoline to the storage tank. He turned the electric current onto the motor, thereby starting the pump, and then left the vicinity of the plant, leaving no one there to attend to the pumping of the gasoline. While he was away, it was discovered by persons in the vicinity that the storage tank was overflowing, the gasoline running down the tank and on the ground. Stewart, who was at a nearby business plant, became aware of this situation, went to the pump house, and, at least the jury was warranted in so believing, turned the electric current off by means of the switch. Immediately thereafter Stewart was seen to leave the pump house with his clothing in flames, from the effects of which he soon died. Flames immediately appeared from burning gasoline on the transfer pipe and the ground between the pump and the storage tank. Notice thereof was immediately given by some one to the fire chief, who came to the scene, organized his volunteer helpers, and attempted to put the fire out, one method therefor being the playing of water on the fire from one or more large hose. He failed to get the fire under control and called for assistance from the bystanders, a number of whom had gathered, and went to the plant of the Standard Brands, Inc., which was in danger from the fire, and told its foreman that he needed help. This foreman then said to a group of his employees, ''Let's go and help Mr. Jones'' (the fire chief), and, according to the evidence for the appellees, specifically directed Joe Richmond, an employee of the Standard Brands, Inc., to do this, telling him to ''get on that hose and help Mr.

Jones." This superintendent of the Standard Brands, Inc., had theretofore placed other of its employees on the roof of its building nearest the fire for the purpose of taking precautions to prevent the fire extending thereto. The fire continued to spread, reached the point on the storage tank where the transfer pipe entered it, and burned there for some time, resulting finally in the explosion of the tank. There were three explosions, the first of which was of the transfer pipe. This explosion may have occurred, but as to which the evidence is not altogether clear, before Jones called on the superintendent of the Standard Brands, Inc., for assistance. Some thirty or forty minutes thereafter one of the storage tanks exploded, and ten or more minutes thereafter the storage tank connected with the tank car also exploded.

Richmond was given no specific directions by any one, other than what has heretofore been stated, as to when, how, and where he should render assistance in fighting the fire. He assisted in holding one of the hose that was playing water onto the storage tank that last exploded, held the hose near its nozzle, and was standing very close to the storage tank where he remained for some time. The heat was very intense, and the danger from an explosion of the tank was evidently realized by some of the persons who were holding the hose with Richmond, and they abandoned it and went to places of safety, but Richmond and one or two others remained, Richmond saying, "Let's stick to her, I believe we are going to win the fight." Several minutes, not exceeding four or five, before the second tank, near which Richmond was standing, exploded, sounds came therefrom resembling, according to some of the witnesses, the popping off of steam, indicating that the danger of the tank's explosion was imminent. According to the evidence for the Superior Oil Company, this tank was equipped with safety valves which would release the

pressure when fire heated the gasoline therein and tend to prevent an explosion, but this fact does not appear to have been known to Richmond. Jones, the fire chief, said that he had fought such fires before and had always extinguished them without the tanks exploding. Just before the tank exploded, Richmond dropped the hose and ran, but failed to get beyond the danger zone, and a large piece of the tank struck him, pinned him down, and flames therefrom ignited his clothing, from which he died almost, if not, immediately.

The ground on which the Superior Oil Company says it was entitled to a directed verdict is that the negligence of its servant in permitting the storage tank to overflow was superseded, and therefore was not a proximate cause of Richmond's death, first, by the intervening act of Stewart in turning off the electric current, and, second, by the act of Richmond himself in unnecessarily and recklessly exposing himself to the danger of the tank's explosion. A superseding cause is defined by 2 Restatement, Torts, section 440, as: "An act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

An intervening force which combines with the negligence of another in producing injury to a third person does not necessarily supersede the original act of negligence and become the sole proximate cause of harm produced thereby. Op. cit., 2 Restatement, Torts, sec. 441; Cumberland Telephone Co. v. Woodham, 99 Miss. 318, 54 So. 890. It does not become such a cause if it "is a normal response to a situation created by the" negligence of another "and the manner in which it is done is not extraordinarily negligent." 2 Restatement, Torts, sec. 447. When the storage tank began to overflow and to discharge gasoline, a highly inflammable

substance, and no employee of the Superior Oil Company was present to stop it, the normal things for another to do, when he saw it, was to stop it himself, and, in doing so, he would be merely discharging a duty resting on the Superior Oil Company. 45 C. J. 933. It does not appear that Stewart was guilty of any negligence in the manner in which he stopped the flow of the gasoline; the turning off and on of an electric switch is a very simple act which any normal person could do. Stewart's act in turning off the electric switch, therefore, did not supersede the negligence of the Superior Oil Company's servant in permitting the storage tank to overflow.

We come now to Richmond's conduct in aiding the fire chief to extinguish the fire. If the escaping gasoline threatened harm to persons or property, the natural and ordinary thing for one to do, under whose observation it came, would be to attempt to prevent the threatened harm, and if his acts in so doing are not extraordinarily negligent, his intervention does not supersede the negligence which brought about the necessity for his intervention, although the intervener may himself be charged with contributory negligence. 2 Restatement, Torts, secs. 443, 445, and 447; Illinois C. R. R. Co. v. Thomas, 109 Miss. 536, 68 So. 773. The conduct of the intervener does not supersede the original negligence, although it is beyond that which is usual and customary in such situations and involved ''an unreasonable risk of harm to'' himself or to others. In order to supersede the original negligence, the intervener's conduct must be so extraordinary and dangerous to himself or to others that the person guilty of the original negligence could not ''have realized that a third person might so act.'' Op. cit., 2 Restatement, Torts, sec. 447. Whether the intervener's conduct was of such character is for the determination of the jury, unless the court can safely say that only one inference can be drawn from the evidence, i. e., that the inter-

vener's conduct was, or that it was not, of such character. Neither can be said here. The magnitude of the danger to persons and property from the burning gasoline was great. Others were incurring the same danger that confronted Richmond, and whether, under the circumstances, Richmond was guilty of extraordinary negligence in remaining longer in the danger zone than they was for the determination of the jury.

Louisville & Nashville R. Co. v. Daniels, 135 Miss. 33, 99 So. 434, 34 A. L. R. 516, and Public Service Corporation v. Watts, 168 Miss. 235, 150 So. 192, relied on by the Superior Oil Company, are not in conflict herewith, for the intervening acts of negligence were not there induced by the negligent act of another, and committed in an attempt to prevent harm resulting therefrom. The court below committed no error in refusing to direct a verdict for the Superior Oil Company.

The liability of the Standard Brands, Inc., is said to arise because Richmond incurred the danger which resulted in his death under the direction of its superintendent, who had the right to direct him to assist in putting out the fire, because of the danger therefrom to its property. The act of this superintendent in merely directing Richmond to assist in putting out the fire was not of itself alone negligence, although some danger might be incurred by Richmond in obedience thereto. As hereinbefore stated, Richmond was given no specific direction as to when, how, and where he was to discharge this order, which cannot be construed to compel or authorize him to incur any great danger to himself. He acted on his own judgment as to the extent of the danger he should incur, and went beyond what his duty to his employer required, or the order given him could be held to have contemplated Goodyear Yellow Pine Co. v. Clark, 163 Miss. 661, 142 So. 443. The request by the Standard Brands, Inc., for a directed verdict should have been granted.

The Superior Oil Company also complains of the refusal of the court below to grant two of its requested instructions. These instructions were to the effect that the jury should find for it if they believed from the evidence that Richmond's death was proximately caused (1) by the intervening act of Stewart, hereinbefore set forth, and (2) by the act of the Standard Brands, Inc., in ordering Richmond "into a known place of danger, after the place of danger had been created, without the knowledge or request of said defendant, Superior Oil Company."

The evidence does not disclose either directly or by inference any conduct on the part of Stewart, from which the jury could have said that his intervention superseded the negligence of the Superior Oil Company's servant in permitting the gasoline to overflow. So there was nothing on this issue to be submitted to the jury.

The order to Richmond by the Superintendent of the Standard Brands, Inc., to assist in controlling the fire, as hereinbefore said, was not of itself alone negligence, and even if it could be held to be such, it was, in so far as the Superior Oil Company is concerned, a normal response to the danger to the property of the Standard Brands, Inc., created by the negligent act of the Superior Oil Company's servant. In order to supersede this negligence, the order to Richmond must have required him to incur a danger so great that so to do was extraordinarily negligent. The requested instruction omitted this element.

Finally, the Superior Oil Company contends that the verdict is excessive to such an extent as to demonstrate that it was rendered because of passion or prejudice on the part of the jury. No request was made for an instruction charging the jury to diminish the damages they might award in proportion to the negligence they might attribute to Richmond, and the brief of counsel for the Superior Oil Company merely states that the verdict is

excessive without pointing out any reason therefor, and an examination of the record discloses none such.

The judgment of the court below will be affirmed as to the Superior Oil Company, but will be reversed as to the Standard Brands, Inc., and a judgment final for it will be here rendered.

So ordered.