## BYRD v. MASONITE CORP., et al.

Nov. 16, 1953

No. 38839 43 Adv. S. 1 67 So. 2d 724

732

*Morse & Morse,* Poplarville, for appellant.

*Deavours & Hilbun,* Laurel, for appellee Masonite Corporation.

734

*Ray M. Stewart,* Picayune, for appellee Johnnie Hawthorne.

McGEHEE, C. J.

The trial court granted a peremptory instruction in favor of the appellees, Masonite Corporation and Johnnie Hawthorne, defendants in the above styled cause, and the plaintiff, Julius C. Byrd, has appealed to this Court. He sued the appellees and Jim Williamson for the statutory penalty and the actual value of certain pine trees that had been cut and removed from forty acres of land admittedly owned by him at the time of the cutting and removal of the trees in question.

The actual value of the trees was shown to be at least $400 or $500, and the plaintiff, on the appeal here, does not contend that the question of whether or not he was entitled to recover the statutory penalty for the trees should have been submitted to the jury but complains only that the trial court was in error in sustaining the motion of the appellees Masonite Corporation and Johnnie Hawthorne for a directed verdict in their favor as to actual damages. Upon the granting of such peremptory

instructions the plaintiff took a nonsuit as to the defendant Jim Williamson.

The declaration alleged that "the defendants Jim Williamson and Johnnie Hawthorne individually, and or as agents for the Masonite Corporation entered upon the lands * * * and did then and there without the consent of the plaintiff cut and remove" the trees in question, on the land of the plaintiff (describing it) on or about the first day of January 1951 and prior to June 8, 1951.

The proof disclosed that the defendant Johnnie Hawthorne had entered into a written contract with defendant Masonite Corporation to furnish it pulpwood at his own expense and with his own equipment and the labor employed by him. ▮▮▮ However, the proof was insufficient to show that the relation between them was that of employer and employee instead of independent contractor, or that the Masonite Corporation ever received from Johnnie Hawthorne or anyone else the trees that may have been cut and removed from the land of the plaintiff.

As to the proof against the defendant Johnnie Hawthorne, it was shown without dispute that during the period complained of someone had cut and removed the trees in question from the land of the plaintiff without his knowledge or consent; that the defendant Jim Williamson did cut timber from land immediately west of the land of Hubert Spiers and that the forty acres of land belonging to the plaintiff lies immediately west of the land of Hubert Spiers; that Jim Williamson admitted this fact and the land on which he cut some trees was immediately north of the fence of the Hillcrest Farm, and that the plaintiff's land is situated immediately north of the Hillcrest Farm; that the defendant Jim Williamson cut trees immediately east of the land of Ferris Tate and that the plaintiff's forty acres is situated immediately east of the land of Ferris Tate; that the said defendant cut and removed timber from land south of that of Fred Spiers and that the plaintiff's forty acres is situated

immediately south of said land; and that the defendant Williamson admitted that the land on which he cut trees was so situated in relation to the lands owned by these other landowners. The said defendant, when questioned as to whether or not that timber which he cut "went to Mr. Johnnie Hawthorne," answered "Yes, sir, it did."

The plaintiff Julius Byrd testified that he talked with the defendant Johnnie Hawthorne about the timber in question and he was asked "What did he tell you about it?" and answered "He told me it was cut and he said 'I guess it was cut accidentally and if it was I paid Fred Spiers for the timber and have it on my books.' " He was also asked "Did he tell you who cut the timber?" and answered "He said Jim Williamson cut the timber." He was further asked "Did he tell you he cut it or had it cut?" and answered "He said Jim Williamson cut it." The witness further stated: "Mr. Hawthorne told me to go to see Mr. Williamson and he said he would see Fred Spiers and they would get together."

The plaintiff further testified that he went to see the defendant Williamson and that the said defendant stated "I believe they went down there about ten acres of it and if we did we got some nice stuff." The plaintiff contended that timber had been cut off of approximately eighteen acres of the forty acres, and at several different times. He was further questioned as to his conversation with the defendant Hawthorne and he repeated his statement that "He (Hawthorne) told me Jim Williamson had cut it and he paid Fred Spiers for it and he asked me to see Jim Williamson and he said 'I will see Fred Spiers and we will get together' * * * "; and on cross-examination the plaintiff was further questioned as to his conversation with the defendant Jim Williamson and the witness stated: "He said 'I believe we made a mistake,' and he said, Hubert Spiers had ten acres that run up in there and we might have run ten acres up on your land and if we did we got some nice stuff off of there." Q.

"Did he (Williamson) say he cut that ten acres or did he say if it was cut?" A. "He said he cut it."

Another witness for the plaintiff, Billie Doyle Wallace, was asked on direct examination: Q. "You say you know that piece of land of Mr. Julius C. Byrd's; did you ever cut any timber off of that land?" A. "Yes, sir." Q. "Who did you cut it for?" A. "Jim Williamson." Q. "Did you help haul that timber?" A. "Yes, sir." Q. "Where to?" A. "McNeil." Q. "On whose yard did it go?" A. "Johnnie Hawthorne's yard." Q. "Is that the Masonite Corporation's yard?" A. "I don't know about that." This witness, however, on cross-examination was asked "Did you cut any timber from the Julius Byrd tract of land?" A. "No, sir," but ordinarily the question of which time he was telling the truth would be for the determination of the jury. F. W. Woolworth Company v. Freeman, 193 Miss. 838, 11 So. 2d 447. Moreover, when this witness was further questioned on redirect examination he said in effect that where he helped cut was to the west of Hubert Spiers' land; that the Hillcrest land was to the south of where he cut, that the land to the west was Ferris Tate's land and that the land to the north was "Shorty (Fred) Spiers' land," and he was then asked "You cut in the middle of where you have described it?" and he answered "Yes, sir * * *." Q. "And you cut it for Jim Williamson and hauled it and put it on Johnnie Hawthorne's woodyard?" and answered "Yes, sir."

Another witness for the plaintiff, Grover Kahl, testified that he cut some timber for Jim Williamson and that it was hauled and delivered to Johnnie Hawthorne, but that he did not know whose land he got the trees from. Hubert Spiers, a witness for the plaintiff, testified as to the location of the plaintiff's land with reference to that of the other landowners hereinbefore mentioned and that he counted 182 stumps where trees had been cut from the plaintiff's land. The plaintiff had estimated the number

of trees to be 197. Under the rule announced in numerous cases by this Court, including that of Stricklin v. Harvey, 181 Miss. 606, 179 So. 345, and cases therein cited, to the effect that "Everything must be considered as proved which the evidence establishes, directly or by reasonable inference, against the party asking for a peremptory instruction," we are of the opinion that there was sufficient evidence to entitle the case to be submitted to the jury on the question of whether or not the defendant Jim Williamson cut and removed the trees in question from the land of the plaintiff and delivered the same to the defendant Johnnie Hawthorne, and that the same were thereby converted to the use of the latter; and that while the witnesses for the plaintiff were not in accord as to the exact number of trees cut, we think that the proof is sufficient to show that at least 182 or 197 trees were cut and that they were of the reasonable value of between $400 and $500. A detailed statement of the number of trees and their dimensions was submitted as an exhibit to the testimony of one of the witnesses and the same was sufficient to enable the jury to determine with a reasonable degree of certainty the value of the trees taken.

 The remaining contention in the case is that the declaration was not drawn upon the theory that the defendant Hawthorne had purchased the trees from Williamson, who had taken them as a trespasser on the land of the plaintiff, and that the defendant Hawthorne then converted them to his own use, but that rather the declaration alleges that both of said defendants acted individually, and/or as agents, servants and employees of the Masonite Corporation and cut and removed the trees. But at any rate they were cut and removed and converted to the use of those responsible for their cutting and removal, and under Section 1464, Code of 1942, it is provided that: "The declaration shall contain a statement of the facts constituting the cause of action, in ordinary

and concise language, without repetition; and if it contains sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different.''

We have therefore concluded that the action of the trial court in granting a peremptory instruction in favor of the Masonite Corporation should be affirmed, and that its action in granting such an instruction in favor of the defendant Johnnie Hawthorne should be reversed and the cause remanded.

Affirmed in part, reversed in part and remanded.

*Lee, Arrington, Ethridge* and *Lotterhos, JJ.*, concur.