MERIDIAN HATCHERIES, INC. *v.* TROUTMAN

No. 40425 March 11, 1957 93 So. 2d 472

*Snow & Covington,* Meridian, for appellant.

498

*Larelle Smith, Lester F. Williamson, Dan Beard,* Meridian; *Morse & Morse,* Poplarville, for appellee.

HALL, J.

Appellee brought suit against the appellant for the recovery of damages for personal injuries sustained by her when an automobile in which she was riding, and being driven by her daughter Mrs. C. N. Burt, collided with an automobile driven by C. V. Nolan in the intersection of 10th Street and 24th Avenue in the City of Meridian. The jury returned a verdict in her favor for $20,000 and Meridian Hatcheries, Inc. appeals.

The basis of liability asserted against the appellant is that Mrs. Burt was traveling east on 10th Street and Mr. Nolan was traveling south on 24th Avenue. Under an ordinance of the City of Meridian 24th Avenue at

the point in question was a right of way street. It was adopted by the city pursuant to the authority of Section 8151, Code of 1942, which specifically provides that such ordinance shall not be effective until notice thereof is posted upon or at the entrance to the right of way street. At the southwest intersection of these two streets there was located a service station which was owned and operated by W. C. Moulds. At the southwest corner of this intersection there was no curb on either street. Both streets were paved and were both thirty-five feet in width. The curb was omitted on both streets near the corner so as to afford a driveway for vehicles on either street entering the service station. On the south side of 10th Street the city erected a stop sign. At the time of the collision a large bus of the school bus type, belonging to Meridian Hatcheries, Inc., was parked on 10th Street immediately adjacent to the south curb of 10th Street and the stop sign and the bus were both situated sixty feet from 24th Avenue. This bus had painted on it signs showing that it belonged to appellant. The bus was parked in such manner as to absolutely obstruct the view of the stop sign from persons traveling east on 10th Street.

Mr. Moulds, at the time of the accident, was vice president and director of appellant and had an arrangement with appellant whereby when not in use the bus could be left at his service station. The appellant was engaged in the business of operating a chicken hatchery and it made deliveries only on Tuesdays and Fridays. The other five days of the week the bus was not in use. It had been used on Tuesday, July 5, 1954, and had been brought back and parked on the street adjacent to the service station so as to obstruct the view of the stop sign, as above-stated. Section 8217, Code of 1942, provided that no vehicle should be parked within thirty feet of any stop sign and according to the undisputed evidence that provision was violated in this instance.

After the bus had been used on July 5th for delivery of chickens to Newton, Mississippi, it was returned to Meridian and parked on the street, as above indicated. The general manager of appellant testified as an adverse witness that he had seen the bus parked in the same spot several different times, that he did not object to its being parked there, and did not tell the employees not to park it in thirty feet of the stop sign. It had been regularly parked in this same spot for over a year, and the general manager had seen it there numerous times. The appellant did not pay Moulds anything for storage, but he was to get all of the company's repair work and gasoline purchases for all of the vehicles owned by the appellant. The general manager testified that Sam Matthews was the driver of the bus on July 5th but that he did not know whether Sam Matthews parked it there. Mr. Moulds testified that the general manager told him that Sam Matthews parked the bus there when he returned from the trip to Newton, and that the bus was serviced according to his records on July 5th but that it was not serviced after it was parked on 10th Street prior to the accident in question. Mr. Moulds further testified that he considered himself responsible for the bus as long as it was on his premises but that he did not consider himself responsible for it while it was parked on the street.

The above-mentioned testimony of Mr. Moulds to the effect that the general manager told him that Sam Matthews parked the bus there when he returned from the trip to Newton was admitted without objection. It may be that the statement could be considered as hearsay, but since it was not objected to it is of evidentiary value. In the case of Citizens Bank of Hattiesburg v. Milller, 194 Miss. 557, 565-566, 11 So. 2d 457, we had this question before us and quoted with approval from 20 Am. Jur. 1036, as follows: " 'The fact that evidence which is introduced in a case may be, if ob-

jected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection. It is the generally prevailing rule that relevant evidence received without objection may properly be considered, although it would have been excluded if objection had been made. Such evidence, where admitted without objection, has the force and effect of proper evidence and is to be accorded its natural probative effect as though it were admissible under the established rules of practice. Applying these general principles, most courts hold that hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. The hearsay rule is merely an exclusionary principle limiting admissibility of testimony and involves no assertion that hearsay statements are without probative force or that they can furnish no logical basis for conclusions of fact, assuming, of course, they are logically relevant to some issue. ██ █ Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy.' And, in the case of Barlow v. Verrill, et al., 88 N. H. 25, 183 A. 857, 104 A. L. R. 1126, it is held that hearsay testimony received without objection may properly be considered by the trier of facts although it would have been excluded if objection had been made. The elaborate annotation on page 1130 of 104 A. L. R. in support of the holding in the case above mentioned discloses that this rule is supported by the overwhelming weight of authority.''

██ █ The last mentioned case was cited with approval in the case of American National Insurance Company v. Craft, 222 Miss. 847, 77 So. 2d 679. Under these authorities the jury was entitled to take into consideration the statement which the general manager made to Mr. Moulds to the effect that Sam Matthews, the em-

ployee of appellant who was driving the bus, parked it on the street at the place in question when he returned from the trip to Newton on July 5th.

 The appellant first argues that the lower court erred in refusing to direct the jury to return a verdict in its favor, the main contention being that the evidence does not establish that the bus was parked at the point in question by an employee or servant of appellant. It is true that there were some conflicts in the testimony of appellant's general manager but these conflicts were for determination by a jury. As we said in the case of F. W. Woolworth Company v. Freeman, 193 Miss. 838, 839, 11 So. 2d 447: "This conflict in her testimony would not have justified the court below in refusing to permit the jury to consider it, but simply presents a case for the jury's determination." This case was cited with approval in Byrd v. Masonite Corporation, 218 Miss. 731, 67 So. 2d 724.

 In this connection it is significant to note that Sam Matthews, the driver of the bus on July 5th, was still in the employment of appellant, was not offered as a witness by the appellant but was available to it, and at the time of the trial had been sent by the appellant to deliver feed. In the case of Anderson v. Cumberland Telephone & Telegraph Company, 86 Miss. 341, 353, 38 So. 786, we said: "The failure to present a witness who can be had, and who is presumed to be friendly to defendant, who knows exculpatory facts if any one does, raises a strong presumption that such facts do not exist."

The same thing was held and the above case cited in Southern Bell Telephone & Telegraph Company v. Quick, 167 Miss. 438, 149 So. 107.

 It is also argued that Moulds was an independent contractor in full charge of the bus from Tuesday, July 5th, until Friday, July 8th. As to this, we have already stated that Mr. Moulds testified that the bus was

not serviced after it was parked on the street, and that under his arrangement with appellant, which was not in writing, he did not consider himself responsible for the bus except when it was on his premises and not in the street. Under his testimony, which the jury evidently believed, he was not an independent contractor. The defendant obtained an instruction specifically telling the jury that it would not be liable if the bus had been left with Moulds for the purpose of servicing and that it was parked at the particular spot in question by the said Moulds or his employees, and thus it is seen that the independent contractor theory was submitted to the jury for its determination.

The appellant also argues that there was no causal connection between the parking of the bus and the accident wherein appellee was injured, but that the negligence of Mr. Nolan and Mrs. Burt was the sole, proximate cause of the accident and constituted an intervening cause, it being contended that either Mrs. Burt or Mr. Nolan, or both of them, were guilty of negligence which negligence was the sole, proximate cause of the collision. The appellant obtained nine instructions submitting this matter to the jury. It argues here that the recent case of Permenter v. Milner Chevrolet Company, 91 So. 2d 243, not yet reported in the State Reports, settles the matter because there was involved in that case the violation of a statute with reference to leaving the keys in the switch of an automobile which had been left unattended on a public street. In that case we held that where a thief took the automobile and later drove it recklessly through a red light, inflicting injury, the owner of the automobile was not liable for such injury because the act of the thief in running through a red light at a reckless rate of speed was an intervening agency. That decision was in accordance with the great weight of authority, but there was involved in that case an entirely different statute, which, according to most courts,

was enacted to prevent the theft of automobiles. In this case we are dealing with a statute and an ordinance which were enacted solely for the purpose of preventing accidents such as we have here. In the case of Blessing v. Welding, et al., 226 Iowa 1178, 286 N. W. 436, there was involved a collision between an automobile in which the plaintiff was riding and another automobile on an intersecting highway. The highway on which the plaintiff was traveling had a stop sign requiring drivers to stop before entering the intersecting highway. There were involved in this case a statute and a city ordinance almost identically like the Mississippi statute and Meridian ordinance except that it was prohibited to park a vehicle within ten feet of any stop sign instead of within thirty feet. The injured plaintiff brought suit for the recovery of damages for the injuries sustained by her in a collision in the intersection, and the lower court sustained a demurrer to the declaration whereupon the plaintiff appealed to the Supreme Court of Iowa and, in an opinion which answers practically all of the argument of appellant herein, that Court said:

"We have here a negligent act which it is claimed resulted in injury through the intervention of another force. Ordinarily it is said that where a second force intervenes, liability depends upon whether or not that second force may be anticipated to be the natural and probable consequence of the negligent act of the first party. The cases in Iowa where this question has come up are so many in number, and the conditions vary to such an extent, that to attempt to analyze all of them would be of little value. Among the later cases on this question is Judd v. Rudolph, 207 Iowa 113, 222 N. W. 416, 62 A. L. R. 1174. This was a case involving three cars, and, in substance, it holds that if the negligence of the operator of an automobile proximately operates to produce a damage, the operator is liable therefor even though another concurring cause operates at the same

time to bring about such damage, and in such case it is quite immaterial whether the concurring cause was or was not negligently put into operation. Citing Rice v. Whitley, 115 Iowa 748, 87 N. W. 694, 695, wherein it is stated: 'If defendants' original and continuing wrong operated proximately in producing the damage, they are liable, even though there was another concurring cause operating at the same time to bring about the result.' Citing Gould v. Schermer, 101 Iowa 582, 70 N. W. 697.

"See Judd v. Rudolph, supra, with cases cited.

"In the case of Fishburn v. Railway Co., 127 Iowa 483, 103 N. W. 481, 484, the court says: 'The mere fact that another cause intervened between defendants' negligence and plaintiff's injury is not enough to relieve the former from liability if the intervening act was of such nature that its happening was to have been apprehended. Stated otherwise, the intervening cause will not relieve the original negligence of its actionable quality if the occurrence of the former might have been anticipated.'

"See also Fitzgerald v. Des Moines City R. Co., 201 Iowa 1302, 207 N. W. 602; Godbey v. Grinnell E. & H. Co., 190 Iowa 1068, 181 N. W. 498; Buehner v. Creamery Package Mfg. Co., 124 Iowa 445, 100 N. W. 345, 104 Am. St. Rep. 354; Burk v. Creamery Pkg. Mfg. Co., 126 Iowa 730, 102 N. W. 793, 106 Am. St. Rep. 377; Ives v. Welden, 114 Iowa 476, 87 N. W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 379, all of which cases are cited by the plaintiff.

"We believe the rule to be that where the act of a third party, even if it is negligent, intervenes between the original negligence of defendant and the injury, there is proximate cause if, under the circumstances, an ordinarily prudent man could or should have anticipated that such intervening act, or a similar intervening act, would occur.

"The case of McClure v. Richard, Iowa, 282 N. W. 312, is not in conflict with this rule. In that case there was a distinct intervening cause. The court properly held that the negligence of the defendant did not concur with the act of the other driver, that they were separate and independent acts, and that the act of the driver of the first car, while negligent, in effect had nothing to do with the negligent act of the second driver. The facts were very different from the facts in the case at bar. The negligence of the defendants in this case in parking in violation of law so as to obscure the stop sign, and which negligence is admitted, was a continuing negligence, in operation at all times while the truck was so parked, and the question arises whether the result of such negligence is such as would be reasonably anticipated.

"In the Restatement of the Law of Torts, p. 1196, sec. 447, the law as to proximate cause and intervening cause is concisely stated:

" 'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

" '(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

" '(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

" '(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.'

"Section 449, p. 1202, further lays down the rule: 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards

which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.'

" These rules are the general rules. As always the difficulty is in the application. However, the question has arisen in other states, the general holding being that such obstruction may be considered as proximate cause. See Lyle v. Fiorito, 187 Wash. 537, 60 P. 2d 709; Milbury v. Turner Centre System, 274 Mass. 358, 174 N. E. 471, 73 A. L. R. 1070; Winsky v. DeMandel, 204 Cal. 107, 266 P. 534; Hansen v. Houston Electric Co., Tex. Civ. App., 41 S. W. 2d 77; Szabo v. Tabor Ice Cream Co., 37 Ohio App. 42, 174 N. E. 18, 20. In the latter case, the court states: 'Unquestionably the intervention of the negligent act of the driver of the New York automobile had an important part in causing the injury to the plaintiff, but it is just as true that the violation of the ordinance on the part of the defendant in parking its delivery truck as it did, in the place where it was, likewise had an important part in causing the injury.'

"In the case of Coca-Cola Bottling Co. v. McAnulty, 185 Ark. 970, 50 S. W. 2d 577, 578, where the facts were somewhat similar to those in the case at bar, the court said: 'There was ample evidence to support the finding of the jury that the injury to appellee would not have occurred if the truck had not been so parked as to obstruct the highway. If it did obstruct the highway when parked there, and this obstruction was negligence, it was a continuing act of negligence up to the time of the injury, and whether it was negligence, and whether the injury would not have occurred but for this negligence, were questions for the jury.' Citing various authorities.

"To the same effect, see Franklin Asphalt Paving Co. v. Marsh, 44 Ohio App. 168, 184 N. E. 768; Paup v. American Telephone & Telegraph Co., 124 Neb. 550, 247 N. W. 411; Fink v. Young, 39 Ohio App. 95, 177 N.

E. 286. See also, Dedina v. C., M., St. P. & P. R. Co., 220 Iowa 1336, 264 N. W. 566; Wright v. C., R. I. & P. R. Co., 222 Iowa 583, 268 N. W. 915.

"It is claimed by the defendants that Beckstrom knew, or should have known, that the intersecting street, Correctionville road, was a main arterial highway, and that it would follow that the fact that the stop sign was obscured would therefore make no difference in his duty as to stopping at such place, or in the result. The defendants urge that he was bound to take notice of it, and therefore knowledge of the situation would be imputed to him. This, however, can hardly have been true. To so hold we must discard any consideration of the purpose of stop signs. The posting of signs, whether in cities or on the rural roads, is the only guide that motorists unacquainted with a vicinity can have in operating their cars. They are so required by law. See section 268 of chapter 134, Acts of the Forty-Seventh General Assembly, which holds that no ordinance as to local traffic regulations shall be effective until such signs are posted.

"Other matters are discussed which need not be considered here. Certain cases cited by defendants do not apply to the facts in this case, nor does the question of evidence. Our inquiry is whether or not the ruling on the demurrer was correct.

"The question of proximate cause as a general rule is a question of fact. The same rule applies as in other questions of fact. This has been determined so many times that it is hardly necessary to cite authority therefor. See Lunde v. Cudahy Packing Co., 139 Iowa 688, 117 N. W. 1063; Swaim v. Chicago, R. I. & P. R. Co., 187 Iowa 466, 174 N. W. 384; Huffman v. King, 222 Iowa 150, 268 N. W. 144, and cases therein cited.

"The violation of both the state law and the ordinance is pleaded. We must assume, therefore, for the purpose

of the demurrer, that the truck was parked within the prohibited distance and did obscure the sign.

"In view of the facts conceded by the demurrer, we are of the opinion that the action of the court in sustaining the demurrer, as well as in striking the subsequent pleading, was erroneous. Under our holdings we are of the opinion that the ruling of the trial court should be reversed."

Our own Court has many times passed on the question of proximate cause and independent, intervening, efficient cause and we quote particularly from the case of Cumberland Telephone & Telegraph Company v. Woodham 99 Miss. 318, 332-334, 54 So. 890, as follows:

"Without attempting to define proximate cause in such terms as will be applicable to all states of fact—for to do so is practically impossible —it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done. In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and, although the author or authors of such cause or causes may also be liable therefor. 29 Cyc. 492-496, inclusive, and authorities there cited. 'If a defendant is negligent, and this negligence combines with that of another or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although

his negligence, without such other independent intervening cause, would not have produced the injury.' Susie B. Harrison v. Kansas City Elec. Light Co., 195 Mo. 606, 93 S. W. 951, 7 L. R. A. (N.S.) 293.

"It is true that appellants could not have anticipated that the particular injury complained of would have resulted from their negligence, or that the injury would have occurred in the particular manner in which it did; but they could, and ought reasonably, have anticipated that some injury would result therefrom. When the telephone wires came in contact with the electric light wires, the necessary result thereof was that electricity of dangerous power might be conducted into the residence of Mr. Woodham. That the light wires were not charged with the current at all times, and that the current was turned off and then on again by the owner of the electric light plant, after a discovery of the condition brought about by appellant's negligence, is immaterial. The fact that the current was turned off and then on again relates simply to the question of Woodham's contributory negligence. It may be that appellant's negligence is not the sole cause of the death of Mr. Woodham, but by it a condition was brought about dangerous to both life and property, and which, combined with the negligence of another, did cause the death of Mr. Woodham. It is true that where the negligent act of a defendant is simply the *causa sine qua non,* and the negligence of a third person is the *causa causans* of an injury, such defendant is not liable in damages therefor; but where the negligence of a defendant results in a condition dangerous in itself, such as an ordinarily prudent person ought to have anticipated might occur, he is liable for any damage resulting therefrom, even though the particular injury complained of would not have resulted, had not the negligence of a third person combined with his."

It is undisputed in this case, and is established by the testimony of the appellee and her daughter, Mrs.

Burt, that the bus completely obscured the stop sign and they did not see it. The daughter lived in Birmingham and was not familiar with the area in Meridian where this accident occurred and had never before driven an automobile in the City of Meridian. Her mother lived in Meridian but was not familiar with this particular area of the city. They both testified that if either of them had seen the stop sign they would have stopped at the intersection. It is clear from the evidence that the failure of the appellee and her daughter to see the stop sign was caused by the negligence of the appellant and the negligence, if any, of the appellee and her daughter, as well as the negligence, if any, of Mr. Nolan, was not superseded by the negligence of appellant.

 █ In Solomon v. Continental Baking Company, 172 Miss. 388, 393, 160 So. 732, this Court said: "Second, where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. 2 Restatement, Torts, secs. 440-442, 447; Cumberland Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 899; Public Service Corp. v. Watts, 168 Miss. 235, 150 So. 192. Other cases could be cited to the same effect. Cf. Superior Oil Co. v. Richmond (Miss.), 159 So. 850, recently decided, but not yet reported (in State Report.)"

See also the following cases. Superior Oil Company v. Richmond, 172 Miss. 407, 159 So. 850; Oliver Bus Lines v. Skaggs, 174 Miss. 201, 164 So. 9; Holmes v. T. M. Strider and Company, 186 Miss. 380, 189 So. 518; Gulf Refining Company v. Brown, 196 Miss. 131, 16 So. 2d 765; Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461.

 █ It appears from the evidence in this case that Mr. Nolan had settled with the appellee by the payment

to her of the sum of $2,000. It also appears that Mr. Moulds had settled with her by the payment of $2,000. The appellant pleaded that by these two settlements the appellee had been fully compensated for her injuries and damages. The appellee undertook to introduce in evidence a copy of the papers which were executed in connection with these two settlements but the appellant objected to the introduction thereof and the lower court sustained the objection and then, in order to complete the record for this court, the appellee undertook to get the papers included in the record, in the absence of the jury, but upon objection of the appellant the lower court would not permit the same to be included in the record. We therefore do not know whether the appellee executed releases or merely covenants not to sue Nolan and Moulds. The appellant did not plead the releases and did not rely thereon at the trial but merely claimed that the two payments constituted full compensation for appellee's injuries and damages. The appellant complains of the first instruction granted to the appellee which was to the effect that if the jury believed from a preponderance of the evidence that the defendant, acting through its servant or agent, negligently parked its motor vehicle on 10th Street within thirty feet of the stop sign and that said vehicle obstructed the vision of passing travelers on said 10th Street to the extent that the plaintiff and the operator of the car occupied by her did not see said sign and could not, through the exercise of reasonable care, see it as they approached and passed it immediately before the collision and that such negligence, if any, of the defendant proximately caused or contributed, in whole or in part, to the personal injuries and damages that were then and there suffered or sustained by the plaintiff, "and that the plaintiff has not been fully compensated for such injuries and damages, you should render your verdict for the plaintiff, whether you do or do not believe that others were

guilty of negligence contributing to such injuries." The appellant now argues that if it had been liable it was entitled to credit for the $2,000 paid by Moulds and the $2,000 paid by Nolan. It must be noted that the instruction did not tell the jury to award the plaintiff full damages. The appellant did not request any instruction telling the jury that it was entitled to such credit or that the damages should be diminished. Such an instruction should have been requested if the appellant desired to take advantage of it and it cannot here complain of the failure of the lower court to so instruct. Avent v. Tucker, 188 Miss. 207, 227, 194 So. 596; A. & V. R. R. Company v. McGee, 117 Miss. 370, 78 So. 296; Lindsey Wagon Company v. Nix, 108 Miss. 814, 67 So. 459; G. & S. I. R. R. Company v. Saucier, 139 Miss. 497, 104 So. 180.

Complaint is made at the action of the lower court in refusing two instructions requested by the appellant and in the granting of another instruction to the appellee. We have carefully considered these assignments and do not think they are well taken.

Complaint is also made of certain objections to the testimony but we do not think there was any error in the actions of the court thereon.

The final complaint is against the action of the court in overruling a motion for judgment notwithstanding the verdict and in overruling a motion to set aside the verdict on the ground that it is contrary to the overwhelming weight of the evidence. From what we have said heretofore it is apparent that the court committed no error in those respects.

It is undisputed that the appellee sustained a most serious and permanent injury and no complaint is made by appellant as to the amount of the verdict, except as we have hereinabove noted.

The judgment of the lower court will therefore be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes,* JJ., concur.