## DEARMAN *v.* PARTRIDGE

No. 41584 November 21, 1960 124 So. 2d 680

*Williamson & Smith,* Meridian, for appellant.

*Snow, Covington & Shows,* Meridian, for appellee.

614

Lee, J.

Mrs. Mary P. Partridge sued Ancil Dearman and Jack Brown, in the Circuit Court of Lauderdale County, to recover actual damages in the sum of $1,000 and the statutory penalty in the sum of $5,910 on account of the alleged wrongful cutting of timber on 40 acres of land owned by her.

Dearman, in his answer, stated in effect that he thought the property in question belonged to the Mississippi State Highway Commission and was under the supervision of contractors, obligated to clear the right-of-way between marked yellow lines; that he did not wilfully and recklessly cut or carry away any trees; and that he and the colored men, using his equipment, were directed where to cut by people who represented themselves to be the superintendents and employees of a construction company whose duty it was to have the right-of-way cleared of standing timber.

The plaintiff called Dearman as an adverse witness, and, by cross-examination, made him admit that he did not know to whom the property belonged; that he made no effort to find out who owned it; and that he did not go to the courthouse to find out about the title. However, he did say "My negroes was up there cutting on this timber before I even knew they were up there." He also said that he had been there two or three times while they were cutting, but that, after taking them to the property, he told them "to wait until some other highway members come before you even cut here." He also said that he told them "Don't cut until someone comes here, you know you right." Again he also told

them, "Don't cut a stick until somebody comes here on this highway and says 'now go ahead'. That is the words I left them." He further testified that "they didn't cut a one when I was there."

It was shown that the timber was cut within the yellow lines, which had been painted by the highway department as the right-of-way on which they hoped to locate the road, which they had under construction one-half to three-quarters of a mile away.

The evidence was also to the effect that during September and October 1958 J. J. Brown was labor foreman for Coulter Brothers Construction Company, which was working on that job, and that checks in the amount of $74.05 for this stumpage were issued to him by the Meridian Timber Company, the purchaser of the timber.

The plaintiff's evidence also was to the effect that 394 stumps, varying from 4 to 18 inches in diameter, were counted on the area where this cutting took place. In the opinion of Ernest Pigford, the father of the plaintiff, the fair market value of the timber was $1,000.

When the plaintiff rested, the jury was retired; and, in its absence, the following events transpired: The plaintiff confessed that J. J. Brown, the other defendant, was entitled to a directed verdict, and the court so rule. Counsel for the plaintiff then moved for a peremptory instruction against the defendant, and the court signified that it would sustain this motion except that the defendant could offer evidence as to the fair market value of the timber. The true picture of these proceedings is portrayed in the following language from the record:

"By Mr. Snow:

"We now move the court to peremptorily instruct the jury to find a verdict for the plaintiff and against the defendant Dearman.

"By the court:

"Sustained. Your motion is not that the plaintiff be granted verdict at this time?

"By Mr. Snow:

"Yes, sir; because of the testimony of the defendant Dearman himself.

"By the Court:

"I was sustaining you on the basis of confining it to Dearman. Now you are asking me for directed verdict against Dearman at this time?

"By Mr. Snow:

"Yes, sir; because of his own testimony. I don't see how any testimony could offset what he said. He can't put on any testimony, your Honor please.

"By Mr. Williamson:

"Your Honor, Mr. Dearman said he took his men out to that right-of-way and the man told them where and when to cut and that is not wilfullness; and also, we have a right to prove the value of the stumpage.

"By Mr. Snow:

"I believe he can prove the value of the stumpage.

"By Mr. Williamson:

"He can prove that and also prove his conduct wasn't willful in that his employees were directed by a member of the State Highway as to where to cut.

"By the Court:

"Mr. Dearman would have to change his own testimony about that matter. However, I will overrule the motion for peremptory instruction at this time as to question of value. I think you are entitled to put on testimony as to that issue.

"By Mr. Williamson:

"I want to make my record for the higher court, if your Honor will permit me out of the presence of the jury, showing that they cut after they were directed where to cut by someone who was with the State Highway Commission, or the contractor, and that they did it in all good faith, that there wasn't anyone who thought they were stealing anything. It was an honest mistake, I will agree with you about that. He is not a lawyer and not a good business man.

"By the Court:

"Gentlemen, I think we are correct in the law. I don't know whether I am right or wrong, but I think I am right on what I briefed myself in defending some cases.

"What do you want the record to reflect? Let me ask you this, Mr. Williamson: do you want now to offer testimony on the issue of value. I wouldn't cut you off from doing that.

"By Mr. Williamson:

"I want to offer the true facts as they took place out there between those negroes and the members of the contracting company who was clearing that right-of-way for the highway project engineers, who directed them where the lines were and where to cut.

"By the Court:

"I think that would be immaterial on Mr. Dearman's testimony."

Following this, the jury was returned to the courtroom and the defendant was permitted to testify that the top price for the stumpage which was cut was $5 or $6 per unit. When he was then asked by his counsel if he had told his men where to cut, and he answered "No", the Court sustained the objection of the plaintiff. When he testified that his men had permission to go on this land, the court, on its own motion, said, "Just a minute. Sustained." The witness also stated that he knew who had given the permission, but the court sustained the plaintiff's objection thereto. He reiterated that he instructed his men not to cut unless someone told them where. Plaintiff's objection to that statement was sustained. At the close of the evidence, the court gave the following instruction for the plaintiff:

"The court instructs the jury that the jury will find for the plaintiff and against the defendant Ancil Dearman in the sum of Five Thousand Nine Hundred Ten Dollars statutory penalty, and in addition thereto such sum as the jury finds from a preponderance of the evidence to be the actual value of the trees cut by the de-

fendant Dearman and his agents, the colored men who did the actual cutting for him.''

The jury, after receiving the instruction, retired to its room and, in due course, returned the following verdict: ''We the jury find for the defendant Ancil Dearman not guilty as charged.'' The court sent the jury back to its room with directions to return a verdict in accordance with the court's instructions. After the elapse of one and a half hours when no verdict had been returned by the jury, the plaintiff moved that judgment be entered for her in the sum of $5,910. This motion was granted, the judgment in that amount was entered, and the jury was discharged. From that judgment, Dearman appealed.

It is true that Dearman admitted that he did not know to whom the timber belonged; that he did not go to the courthouse and ask about the title; and that he did not make any other effort to find out who owned it. But he also testified that his men had been cutting on this timber before he even knew they were up there; that they did not cut a stick in his presence; and that he enjoined it upon them to wait until the highway employees showed them where to cut.

It was not conclusive, from the above statements of Dearman, that the statutory penalty should be imposed for this cutting. On the contrary, his testimony to the effect that he admonished his men to wait for the highway employees to show where they should cut evinced the belief that the timber was being cut at the instance of the highway department or its contractor, and was therefore some evidence of good faith. But even when the statements are conflicting it is a jury question to determine which, in fact, is true. F. W. Woolworth Co. v. Freeman, 193 Miss. 838, 11 So. 2d 447; Byrd v. Masonite Corp., 218 Miss. 731, 67 So. 2d 724; Thompson v. Thomas, 219 Miss. 552, 69 So. 2d 238; Posey v. Weatherspoon, 227 Miss. 189, 85 So. 2d 908; Meridian Hatcheries, Inc. v. Troutman, 230 Miss. 493,

93 So. 2d 472; Johnson v. Richardson, 234 Miss. 849, 108 So. 2d 194.

In the case of Reynolds v. McGehee, 220 Miss. 750, 71 So. 2d 780, this Court, in construing the meaning of Section 1075, Code of 1942, as amended by Chapter 312, Laws of 1950, said: "Consequently, the owner of timber now makes out a prima facie case of his right to recover the penalty when he shows (1) that he owns the timber, and (2) that the defendant or his representative cuts it without his consent. If the defendant pleads good faith as an affirmative defense, he may then, of course, offer evidence to that effect." The opinion cited Kelley v. Welborn, 217 Miss. 16, 63 So. 2d 413, which held as follows: "Thus, good faith is now an affirmative defense which must be pleaded and established by the defendant."

 The allegations of the defendant's answer were sufficient to make an issue on the question of good faith in the cutting. In Strawbridge v. Day, 232 Miss. 42, 98 So. 2d 122, this Court said: "The phrase 'good faith', as used in a statute such as we have here, denotes honesty of purpose, freedom from intention to defraud or to deprive others of rights or property to which in equity and good conscience they are entitled. In order to avoid liability for the statutory penalty in a case of this kind the defendant is not required to prove freedom from negligence, but only that the trespass was not willful, or did not result from wantonness or recklessness."

 As stated, the defendant's plea or defense to the imposition of the statutory penalty was his good faith in the cutting. His counsel fully apprised the court of the nature of the evidence which he wished to offer for the purpose of sustaining that defense. He had the right to adduce it if he could. The court's refusal of that right denied him his day in court.

Consequently, for the error of the court as heretofore stated, the cause is reversed and remanded for a new trial.

Reversed and remanded.

All Justices concur, except *Hall, J.*, who dissents.

HALL, J., dissenting:

I am compelled to dissent from the conclusion of the Court in this case and this is for the reason that in my opinion Ancil Dearman on his cross-examination made out a clear-cut case of liability against himself. When called as an adverse witness, he admitted that the Negroes who were working for him cut and hauled pulpwood from off the right of way of the land in question and he admitted that he did not know whose place it was on at the time. He said he was there before they started cutting and he went for the purpose of cutting pulpwood in this area. He said that he did not make any effort to find out who owned the property and on Sunday after he and his hands had been there a week, he found out that the property belonged to Mrs. Partridge. He said that he had three men cutting and he was out there two or three times while they were cutting and he paid for all they cut and had it hauled away. He said that the road had been bulldozed and inside a week it rained. He did not deny that there were 394 stumps cut by his men and he admitted that he made no investigation as to the title to the property and said that he got his money out of the checks issued for this pulpwood which he said was sold to Meridian Timber Company for $17.50 or $18.00 a unit. He said that his Negroes, paid by him, went there and started cutting and he had no deal with anybody about the cutting. He said that he owned the trucks which hauled the timber away and that it was his power saws, for which he furnished the gas, and he knew where they were cutting. As I see the record in this case, it is absolutely unquestioned that Mr. Dearman cut timber from land that he did not own and did not even take the trouble to investigate or inquire who owned it and he made no pretext at explaining or giving any reason whatsoever why he went

there and had his men cut this timber without authority and without any investigation to determine to whom the timber belonged.

Under the facts in this case which are undisputed, Dearman made out a case against himself and should be held liable.