SEYMOUR *v.* GULF COAST BUICK, INC.

No. 42650          May 6, 1963          152 So. 2d 706

*Morse & Morse,* Gulfport, for appellant.

*P. D. Greaves,* Gulfport, for appellee.

McElroy, J.

This is an appeal from the judgment of the Circuit Court of Harrison County, Mississippi wherein the defendant, appellee, was granted a peremptory instruction to find for defendant, after the plaintiff's, appellant's, and the appellee's case had been presented.

The appellant is a 63-year-old man. He is a painter by trade, and, before his accident on February 10, 1962, had been engaged as a painter for seventeen years. He worked for five years at the Edgewater Gulf Hotel and twelve years at the Keesler Air Force Base at Biloxi, Mississippi. At Keesler he earned approximately $170 every two weeks. Prior to the injury, his health had been excellent. He had been able to go anywhere and do anything and climb up ladders. After the accident, he was unable to do any type of work which he had done prior to it, except very light work that did not require him to climb a ladder.

On the date of his injury, appellant had taken his automobile into appellee's establishment and had driven it to a point approximately ten feet from a pit used by appellee to align automobile tires. The appellee's employee aligned the appellant's automobile tires and backed the car off the aligning mechanism. The appellant then requested the appellee to check his carbureter and the appellant backed away from the car. He slipped on some oily or slippery substance which he stated was oil. His feet went out from under him and he fell backwards into a pit some four feet·deep, striking his head on a motor. There was nothing to warn the plaintiff of the existence of the pit, nor were there any safeguards or rails around the pit. As a result of his injuries, the appellant incurred doctors' bills in the amount of over $1,400.

The appellant's testimony is to the effect that he drove his car in and requested that the car be fixed.

They drove the car up on the pit on which they aligned the wheels, and when they drove the car back, appellant requested them to do some other work on it. The floor was slippery from oil, which caused him to slip into the pit. There was no barrier or guard to prevent him from falling in. His feet slipped on the oil, that is, "over I went", he stated. The oil was on the floor just a short distance from the pit. From the appellant's testimony, there was no doubt that there was oil on the floor and that the pit was unguarded by rail or any kind of chain or sign indicating danger. Seymour, the appellant, testified:

"My feet went out from under me and I knew there was grease or something there that caused my feet to go out from under me." There was not any rail or anything around the pit to warn him that the pit was there. "There was nothing in the world — just a plain hole in the floor, flat floor."

On cross-examination the appellant stated, "The only thing that I can say is this: I went in and got out of my car and the boy took my car and put it on the truing rack as they call it, to align the tires up, and he rolled it off, then he was there underneath the hood working on something and I was standing there by him and said to him to check my carbureter while he was doing that. Then I backed off, and when I did I slipped down, I went just like I said in that pit; it was from slickness from a slippery floor, a little dampness of oil, I seen it, definitely. I seen it; I absolutely slipped on oil. On a slippery floor with oil on it, that's what I did." He absolutely saw it before he slipped. He didn't know how long it had been there on the floor. He slipped and over-balanced and fell into the pit from the south side of it. He stated: "I do definitely know that I slipped into oil, I will say that, that my feet were slippery and I slipped into oil and slipped over into that, and balanced over and went into the pit. There was enough there

that most anybody could have slipped in it, as far as that goes. If I did not notice it, I didn't have any intention of slipping in oil, but I did step back from the car and stepped in it and slipped. I would definitely say that." He never noticed the oil or grease on the floor until he stepped into it.

The appellee's testimony was to the effect that they had a janitor that went around cleaning up the floor around the pit, and he testified that he did this around seven-thirty in the morning, and that the accident happened about eight o'clock. The janitor did state he didn't know if there was oil on the floor at the time Seymour slipped or not.

From the above testimony of Mr. Seymour, and from the record, the appellee contends that Seymour made conflicting statements and completely reversed himself in his own words. In the case of Dearman v. Partridge, 239 Miss. 611, 124 So. 2d. 680, the Court said:

". . . even when the statements are conflicting it is a jury question to determine which, in fact, is true. F. W. Woolworth Co. v. Freeman, 193 Miss. 838, 11 So. 2d 447; Byrd v. Masonite Corp., 218 Miss. 731, 67 So. 2d 724; Thompson v. Thomas, 219 Miss. 552, 69 So. 2d 238; Posey v. Weatherspoon, 227 Miss. 189, 85 So. 2d 908; Meridian Hatcheries, Inc. v. Troutman, 230 Miss. 493, 93 So. 2d 472; Johnson v. Richardson, 234 Miss. 849, 108 So. 2d 194."

(Hn 1) We believe that conflicting testimony is a question for the jury to determine.

It must be accepted as proof that the appellant was at a place where he had a right to be; that while he was aware of the existence of the pit, there were no safeguards around it to prevent him from falling; that the proximate cause of his slipping and falling was an accumulation of grease or oil on the floor of the garage near the pit; that oil and grease had to be cleaned from the floor daily by a porter; and it is a fair inference

to draw from the testimony that on the morning of the accident he missed or overlooked the patch of oil or grease in which the appellant stepped, slipped, fell, and was seriously injured.

In the case of Elias v. New Laurel Radio Station, Inc., 146 So. 2d 558, the Court held:

"In considering the motion for a peremptory instruction 'everything must be considered as proved which evidence established, either directly or by reasonable inference, against party requesting peremptory instruction.' Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842; Keith v. Yazoo and M. V. R. Co., 168 Miss. 519, 151 So. 916; Gravette v. Golden Saw Mill Trust, 170 Miss. 15, 154 So. 274, Columbian Mutual Life Ins. Co. v. Gunn, 173 Miss. 897, 163 So. 454; Farish v. Canton Flying Services, 214 Miss. 370, 58 So. 2d 915; Bankston v. Dumont, 205 Miss. 272, 38 So. 2d 721; Maguire v. Carmichael, 240 Miss. 732, 128 So. 2d 581.

"Since appellant was an invitee, it was the duty of the appellee to have and keep its bowling house in a reasonably safe condition. . . . Western Union Tel. Co. v. Blakely, 162 Miss. 854, 140 So. 336."

In the case of Patterson v. Sayers, 223 Miss. 444, 78 So. 2d 467, the Court held:

"Mrs. Patterson brought this action against Mr. Sayers to recover money damage for injuries she claims to have received when she fell in the hotel lobby of the Concord Hotel in Natchez, Mississippi, which fall, she avers, was the result of the failure of Mr. Sayers, operator of the Hotel, to use reasonable diligence to maintain a reasonably safe place for passage through that lobby. When Mrs. Patterson rested her case the learned trial judge instructed the jury to return a verdict for Mr. Sayers, which was done, and judgment was entered accordingly. . . .

"The questions involved are: (1) the character of the relation which existed between the parties; and (2)

the duty owing by Mr. Sayers to Mrs. Patterson. Mrs. Patterson says the testimony would have justified the finding by the jury that she was an invitee on the Hotel premises and that Sayers owed her the duty to use ordinary care to have the premises in a reasonably safe condition for use by her and that Sayers violated his duty in that respect, resulting in her injury.

. . .

"In our view this testimony would have justified a finding by the jury that Mrs. Patterson was an invitee into the lobby of the Hotel. In Nowell v. Harris, Miss., 68 So. 2d 464, 467, this Court said: " 'An "invitee" is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage.' " . . .

"Now, as to that duty Mr. Sayers owed Mrs. Patterson, it seems to be settled that the operator of premises is under duty to exercise reasonable diligence to keep such premises in a reasonably safe condition for use by an invitee. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858; Sears, Roebuck & Co. v. Burke, 208 Miss. 306, 44 So. 2d 448; Louisiana Oil Corp. v. Davis, 172 Miss. 126, 158 So. 792; Wilbourn v. Charleston Cooperage Co., 127 Miss. 290, 90 So. 9; Montgomery Ward & Co., Inc. v. Windham, 195 Miss. 848, 16 So. 2d 622, 17 So. 2d 208; Western Union Telegraph Co. v. Blakely, 162 Miss. 859, 140 So. 336; Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447; 38 Am. Jur., p. 754, Sec. 96.

"It is an undisputed fact that Mrs. Patterson did slip and fall on the lobby floor. It is also a fact that she fell because she slipped on that floor. It is undisputed, as the record now stands, that she fell because of the condition of the floor. She and others testified that the place where she slipped was of a different color from the adjacent floor. . . .

"We might further set out details and give reasons why a jury, as reasonable men, could have concluded from all the facts and circumstances here that reasonable diligence and care to have the lobby floor in reasonably safe condition had not been exercised; but we think that conclusion is evident from what has been said." This case was reversed and remanded.

A Michigan case in some respects similar to the facts in this case is Gugel v. Sears, Roebuck & Co., 308 F. 2d 131 (1962). The plaintiff fell into an open grease pit in the premises of the defendant's service garage. Plaintiff was following one of the defendant employees in the area of the pit when he fell into it and was injured. There was ice on the floor and a lot of water, and it was very slippery. He charged negligence in failing to keep the garage adequately lighted, in failing to keep the grease pits properly guarded by use of chains, guard rails or other protective devices, and negligence of the defendant's employee in failing to lead him through the maze of pits.

Previous to the accident, defendant had maintained chains around the pit, but they were not in place on the day of the accident. After the accident, defendant installed the protective chains. While there was no showing that the defendant was required by law or ordinance to provide the chains, the Court said:

"It was tried to a jury, which returned a verdict for plaintiff in the amount of $7,850, upon which judgment was entered. Defendant-appellant appeals, contending that the district court erred in denying its motion for a directed verdict and submitting to the jury the questions of its negligence and plaintiff-appellee's contributory negligence, and also erred in denying its motion for judgment notwithstanding the verdict.

. . .

"The plaintiff also claims that the defendant was negligent in failing to keep the grease pits in its service

garage properly guarded by the use of chains, guard rails or other protective device. At the time of the accident there was a steel rim painted red around the edge of each pit extending about four inches above the surface of the floor. There was testimony that prior to the accident the defendant had maintained a protective chain arrangement around each of the grease pits, the chains being attached to metal posts about three feet in height located in the corners of the pits, but that the chains had been removed and were not around the pits at the time of the accident. There was also testimony that defendant had replaced the protective chains around the pits subsequent to the accident. There was no showing that the defendant was required by State statute or by city ordinance to guard the pits by the use of chains or other protective device. However, we are convinced that the testimony presented a question of fact for jury determination as to whether the defendant was negligent in not maintaining some type of barricade or protective device around the pits higher than the four-inch steel rim at the time of plaintiff's accident." See Pfeifers of Ark. v. Rorex, 225 Ark. 840, 286 S.W. 2d 1, 62 A.L.R. 2d 1, and Annos.

(Hn 2) From the record we are convinced that the testimony presents a question of fact for the jury to determine as to whether defendant was negligent in maintaining its garage floor in a reasonably safe condition.

Reversed and remanded.

*Lee, P. J., and Arrington, Rodgers and Jones, JJ.,* concur.