JOHNSON *v.* RICHARDSON

No. 40952 January 12, 1959 108 So. 2d 194

*Carter & Van Every,* Columbus; *Lipscomb, Ray & Barksdale,* Jackson, for appellant.

*Roger C. Landrum, Wm. J. Threadgill, Columbus,* for appellee.

Lee, J.

C. H. Johnson, plaintiff, in his declaration, charged that, on January 18, 1957, while he was operating his 1956 model Plymouth automobile in a westerly direction on Airline Road in Lowndes County, the defendant, Earl Richardson, operating his 1956 model Ford automobile in an easterly direction on said road, negligently drove his automobile across the center of said road and struck the plaintiff's automobile with great violence, as a proximate result of which, he was seriously and permanently injured.

The defendant, in his answer, admitted that the automobiles were being operated in the directions and at the

time charged, but denied that he was guilty of negligence proximately causing or contributing to the collision. He made his answer a counterclaim and charged that he was the acting constable of District 3 of the county in the immediate pursuit of a suspected violator of the law and was operating an emergency vehicle, as provided by Sections 8148 and 8180, and other applicable provisions of the Code of 1942, Recompiled, with his siren sounding at maximum capacity, and driving on his right hand and proper side of the road; that the plaintiff and cross-defendant negligently continued to operate his automobile in a cloud of dust raised by the pursued motor vehicle; and that the plaintiff and cross-defendant negligently drove his automobile across the center and into the south, or defendant and cross-complainant's side, colliding his Plymouth with the Ford of defendant and cross-complainant with such violence that the defendant and cross-complainant was seriously and permanently injured.

The cause was submitted to the jury, and it found a verdict for the defendant and cross-complainant in the sum of $20,000. From the judgment entered, Johnson appealed.

(1) The appellant contends that the verdict of the jury was contrary to the overwhelming weight of the evidence.

Johnson testified that just as he came off of the blacktop, he saw a car, operated by Jim Bradley, a Negro, at a speed of about seventy miles an hour, and that he pulled to the right in order to let it pass. A "ball of dust" was raised. At that time Johnson was going about thirty miles an hour, but, because of the dust, he cut down his speed and was then traveling at about fifteen miles an hour. He had his right wheels near the edge of the right side of the road when the Richardson car came across the road onto his side and struck him. He heard no siren. In other words, at a time when he was driving properly on his right side of the road, Richardson came across the road and hit him.

Mrs. Ed. Fortner, her daughter Barbara, age seventeen years, and her younger son, Ellis, in front of whose home the collision occurred, testified that they heard the collision and went to the scene shortly afterwards. They saw some debris and chrome north of the center line of the road. The tracks of Johnson's car went along the shoulder for fifty or sixty feet. Mrs. Fortner said that the debris which she saw was about a foot over the center. All of them said that they could not tell where the impact occurred. Mrs. Fortner and Barbara also saw some glass on the south side of the road. Ellis heard the siren as it was dying. Neal McCluskey testified that the debris from the cars, where, he took it, they hit, was north of the center line; and that Johnson's tracks went through the debris and angled off. The Fortners knew Richardson only because of the fact that some time previously he had arrested their husband and father.

On the other hand, Richardson testified that he was chasing the Negro, Jim Bradley, in his car because he thought it was being used to transport liquor, and that Bradley had driven recklessly in his presence; that the Negro was driving seventy to eighty miles an hour, and that he dropped back on account of the dust and in order to see which end of Highway 69 Bradley would take; that he cut his speed and stayed on the right shoulder, and Johnson's car "floated" out of the cloud of dust, came across the center line at a forty-five degree angle, and ran into his car just behind the left front light, causing it to go forward only eight or ten feet and turn over on its side.

Will Perrigan testified that he heard the siren and that it stopped, and he heard the noise and saw a big dust. He hurried to the scene. The tracks showed that Johnson's car went over to the south side of the road; that gravel was piled up and plowed back; that Johnson's car then made a change of direction and the tracks led directly to his car; and that when the cars collided, Rich-

ardson was plowed off the south side and lacked only eighteen inches of being off the shoulder. A photograph, taken before the cars were moved, was introduced in evidence and the scene, as there shown, was testified to by both Richardson and Perrigan.

Woodfin Green testified that he heard the siren and that he arrived at the scene within one and a half minutes after the wreck occurred; that the Fortners were in their yard throwing up their hands and yelling; that they did not check the tracks of the car; that there was debris on the south side near Richardson's car; that grass, etc. was on the fenders and wheels, showing that the right-hand wheels had been dragged down the side of the road; and that at the time one could not understand anything that Richardson said. He observed the physical facts and testified that the photograph accurately represented them. His evidence could reasonably be deemed corroborative of Richardson's version.

■■ This was the second trial of the case, and by reference to the transcript of the evidence on the first trial, certain answers were susceptible of perhaps showing a difference in the statements of some of the witnesses. Johnson had answered a number of questions by an investigator just after he got out of the hospital. The questions and answers were taken by a court reporter, and some of the answers therein were different from his testimony on the stand. However, he said that he could hardly talk at the time and that the inquisitor and the stenographer must have misunderstood what he said. Of course the credibility of the witnesses is judged by the jury.

■■ The evidence being in sharp dispute, the issue was properly submitted to the jury; and this Court cannot say that the verdict of the jury was contrary to the great weight of the evidence.

■■ (2) The appellant also contends that the trial court was in error in refusing his requested instruction

on Page 387 of the record. This was a peremptory that Richardson was not on an emergency mission and was not in pursuit of a criminal for the purpose of making an arrest. It is true that Richardson testified that he did not have information that the Negro, Jim Bradley, was transporting liquor on that particular day, but he also testified that Bradley was driving recklessly in his presence at the time. In the latter event, he was committing a misdemeanor in the presence of the officer, who, on that account, was authorized to make an arrest without a warrant. The jury was the judge as to which statement of Richardson should be believed. F. W. Woolworth v. Freeman, 193 Miss. 838, 11 So. 2d 447, and the cases which follow that rule. Actually a prosecution was instituted against Bradley in the justice of the peace court on a charge of reckless driving on that occasion, and he pled guilty and was sentenced therefor. The court properly refused the instruction.

(3) All of the plaintiff's instructions were charges "for the plaintiff", and he was given an instruction on the form of the verdict "If you find for the plaintiff", etc. However, he says that it was error for the court to give the following instruction for the defendant to wit: *"The Court instructs the jury for the defendant* that the burden of proof is on the plaintiff to prove his case by a preponderance, that is, the greater weight, of the credible evidence, and if you find that the plaintiff has failed to do so, then you must find for Earl Richardson." (Emphasis supplied.) He concedes that it would have been correct if, following "Earl Richardson", there had been added "as a defendant." But, in the opening clause, the jury was told, as above emphasized, that the court instructs the jury "for the defendant." The instruction was on the burden of proof as to the original claim, that of the plaintiff, and if he failed to make out the same by a preponderance of the evidence, it was the duty of the jury to find a verdict for the defendant there-

on. There is no rational basis on which to contend that the failure of the plaintiff to make out his case by a preponderance of the evidence thereby made out a case for the cross-claimant. Besides, by the plaintiff's given instructions on the merits, the cross-complainant was required to make out his cross-claim by a preponderance of the evidence.

(4) The appellant also maintains that it was error for the court to give Instruction No. 2 for Richardson, based on Sections 8199 (a), and 8250, Code of 1942, Recompiled, to the effect that if the jury believed from a preponderance of the evidence that the counter-claimant, as constable, at the time was engaged in the discharge of his duties and in the immediate pursuit of an actual or suspected violator of the law and was sounding his siren, then he was entitled to assume that Johnson and others using the highway at that point would comply with the statute and yield the right-of-way as provided by the statute. This instruction must be viewed however in the light of the cross-claimant's given Instruction No. 3, of like import, which required the jury, before it could find that Richardson's claim was valid in this respect, to find also that there was proximate cause or contribution between that failure, if any, on the part of Johnson, and the collision and resulting damage to Richardson. The instruction must also be considered in the light of given Instructions Nos. 2, 5 and 8 for Johnson, all of which pointed out clearly that Richardson, whether he was on official duty or not, was not excused from operating his automobile in a careful manner, with due care toward others, under easy control, and in keeping a proper lookout, and if he failed in the discharge of any or all of those duties, and such failure proximately contributed to the collision and the resulting damage, the jury should find a verdict for Johnson. These instructions are long and their quotation would unduly extend the length of this opinion. It is sufficient to say that the Court, after due

consideration, is satisfied that all of these instructions, when read and considered together, fairly stated that issue and that there was no occasion for the jury to be misled. The jury is assumed to have applied the instructions. Alexander's Mississippi Jury Instructions, Section 10, p. 10. It is assumed that the instructions will be read and considered as a whole. Orr v. Columbus and Greenville Railway Company, 210 Miss. 63, 48 So. 2d 630. It is also assumed that the jury obeyed the instructons. Illinois Cent. R. Co. v. Woods, 191 Miss. 628, 3 So. 2d 826. Under the particular facts in this case the Court also deems these instructions, when read and considered together, not in conflict with the announcement of this Court in Rawlings v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630.

 (5) The appellant maintains that the three instructions for Richardson on the form of the verdict were erroneous. Section 1483.5, Code of 1942, Recompiled, provides that the defendant in a cause where he has a claim or demand against the plaintiff, may, in his answer, plead such claim or demand by way of counterclaim, etc. Issue is then to be joined thereon. By the Third Paragraph of the section, the several different judgments are provided for as follows: ''If it appears at the trial that the demand of the defendant is valid and equals the demand of the plaintiff, the judgment shall be that the plaintiff take nothing by his writ and pay the costs of court. If it appears that the plaintiff's demand is valid and exceeds that of the defendant, the plaintiff shall have judgment for only that portion of his demand which exceeds the valid demand of the defendants, with costs of court, but if it appears that the demand of the defendant is valid, and exceeds the demand of the plaintiff, the defendant shall have judgment for the amount by which his claim exceeds the claim of the plaintiff, with costs of court.''

In one instruction, the jury was instructed that, if the demands of the parties were valid and equal, the verdict should be for the defendant. In another, if the plaintiff did not have a valid claim against the counter-claimant, and if the counter-claimant had a valid claim against the plaintiff, then the verdict should be for the counter-claimant for his compensatory damages. And in the third, if both parties had valid claims, but the claim of the counter-claimant exceeded that of the plaintiff, then the verdict should be for the counter-claimant for the excess over the plaintiff's claim. Unquestionably these instructions, in presenting the theory of the counter-claimant, constituted a substantial compliance with the statute. The plaintiff did not request instructions on this point, but merely asked for and obtained the form generally sought where the jury finds for the plaintiff. The words "claim or demand" show that they were used interchangeably and are intended as synonyms. Their meaning should not be misunderstood by any person of sufficient intelligence to qualify as a juror.

(6) The appellant also maintains that the instructions must have confused the jury, or at any rate, they must have been ignored when the jury returned this verdict: "We, the jury, find that the counter-claimant having the more valid claim do find in his favor for $20,000.00." He argues that, while this amount is excessive for Richardson's injuries, at the same time the verdict does not show that the jury actually fixed any value for Johnson's valid claim. He says that the jury should have been required to fix the value of each valid claim, and, by subtracting the same, arrive at the excess.

But, if the assumptions as indulged in Section 4 of this opinion, supra, are followed, it must be obvious that, although the jury did not indicate the respective amounts in its verdict, nonetheless, when it found for the cross-complainant in the sum of $20,000, it thereby determined that Richardson should receive that amount of money

for his injuries; and since it returned no amount for Johnson, it is inescapable that the amount of the verdict constituted the excess of Richardson's claim over his, if he had any, as measured by the jury.

■ ■ (7) The appellant contends that Section 1483.5, supra, is in irreconcilable conflict with Section 1454 of the Code, which is the comparative negligence statute. The Court does not think so. Besides neither party to this litigation invoked Section 1454.

■■ (8) As to the respective injuries, it was shown that Johnson sustained a lacerated chin, a fracture through the lower portion of his pelvis bone, a comminuted fracture of the bones about the left wrist, and fractures of two ribs on the left side. His doctor testified that the ribs and pelvis bone had healed completely without any permanent disability on that account, and that there was a twenty-five percent to thirty percent disability to the wrist. There was also proof as to pain. Johnson, after his recovery, went back to the same job that he had before the injury, and at the same pay.

Richardson sustained an almost complete severance of the tongue about three-fourths of an inch from the tip, which has permanently impaired his speech, a badly cut lip, a comminuted fracture of the nasal bone, a fracture of the seventh rib on the left side, and a comminuted fracture of the os calcis, the large bone in the foot. The left leg, at the time of the trial was one and a quarter inches smaller than the other. He has a limp, which is permanent, and is unable to "step off" on that leg. The doctor estimated his loss of function in the left leg at fifty percent to fifty-five percent. There was also proof as to intense pain, and that where he had been able to do hard work prior to his injury, he is now unable to do so.

Under all of the circumstances, in view of the finding by the jury, the Court is unable to say that the verdict is excessive.

Thorough consideration has been given to the whole case. No reversible error appears in the record, and the cause must be affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.