MARTIN *v.* ILLINOIS CENTRAL RAILROAD COMPANY, et al.

No. 42510          February 4, 1963          149 So. 2d 344

*Forrest B. Jackson,* Jackson, for appellant.

104

*Wise, Smith & Carter,* Jackson; *Joseph H. Wright, John W: Freels, Wence F. Cerne,* Chicago, Ill., for appellees, Illinois Central Railroad Company and Roger Burt.

*Lott & Sanders,* Greenwood, for appellees, W. E. Martin et al.

Rodgers, J.

This is a damage suit filed by Mrs. Mary E. Martin against a nephew, brothers and sisters of her late husband, Roy Martin, the I. C. R. R. Company, and its Claim Agent, Rodger Burt, for the alleged alienation of the affections of plaintiff's husband, so as to entice him to separate from her.

This case came to this Court from the Circuit Court of the First Judicial District of Hinds County, Mississippi, and is an appeal from a jury verdict and judgment in favor of appellees. Appellant made a motion for a new trial in the circuit court, and when this motion was overruled, she appealed here. Appellant contends that the motion should have been sustained, because the verdict of the jury was contrary to the overwhelming weight of the evidence. It is therefore necessary to present a synopsis of the evidence on which this claim is based.

The testimony in this case is, to some extent, a reiteration of the testimony shown in the case of Young v. Martin, 239 Miss. 861, 125 So. 2d 734, 126 So. 2d 529.

Miss Mary E. Singleton and Roy J. Martin were married in Kemper County, Mississippi, November 26, 1931. To the union were born three sons, Roy, Jr., W. R. and Eugene Martin. They formed a close-knit, congenial family. They took vacations and went to foot-

ball games together, and were affectionate, one member toward the other members of the family. Mrs. Martin worked at a hosiery factory and also rented rooms to help augment the family income. In 1937, Roy Martin had a nervous breakdown and had to be treated in the Mississippi Mental Hospital at Whitfield. He fully recovered his health and was gainfully employed by the I. C. R. R. Company as car inspector at Durant, Mississippi. During the night of the 24th of July 1954, Roy Martin was thrown under a freight train and injured, ultimately resulting in the amputation of both legs. Up to the time of his injury, and for a short time thereafter, the relationship between appellant and her husband continued to be congenial, and the record shows they had genuine concern for each other.

Mrs. Martin quit her job and went to the hospital with her husband at the time of the injury. Their financial situation became strained, although the Railroad Company furnished nurses and paid the hospital bills. At this time, Mrs. Martin became so destitute she was driven by necessity to eating what remained on her husband's plate at the hospital, and one of the nurses brought food from her home to Mrs. Martin. During this time, however, Mrs. Martin collected some insurance from policies she had and was able to continue to stay with her husband. The brothers and sisters of Roy Martin continued to visit him. The Claim Agent of the Railroad, Mr. Burt, visited him regularly. Appellant claims that Mr. Burt employed Mrs. Lucy Magee, sister of Roy Martin's to stay with him and that she began to beg her brother to go to McComb instead of returning to their home at Durant. Mrs. Martin claimed that just before the time appointed for his return to Durant from the hospital, appellant observed Eugene and Van Martin, Mr. Burt, Mrs. Douglas, and Mr. Smith, a yard foreman, on the hospital patio with her husband. She became suspicious about the family gathering because

Mr. Burt had often questioned her with reference to employment of an attorney. When she had an opportunity, she asked Mr. Burt what occurred. He advised her that it was none of her affair. "Gene", son of Mr. and Mrs. Roy Martin, testified that he was notified that there was trouble at the hospital, and he went there and found the family on the patio, and when he asked about the trouble, one member of the family told Roy, his brother, to tell him, whereupon Roy said: "* * * these people tell me that my mother poisoned my grandfather." He said his uncle then said "Well, I'll tell you how I feel about it, I would not drink a glass of water in Mary Emma's house."

Mrs. Martin also testified that Mrs. Douglas came to her home and got her burial insurance policies, after they had returned to Durant.

It became necessary for Roy Martin to return to the hospital and while they were in the hospital, Van Martin, brother of Roy, told Mrs. Roy Martin she ought to go home, that she was spending too much money. She said that Eugene Martin pointed his finger at her and told her he had authority to settle with her and send her home; and that he dragged her back into the room when she attempted to leave. She further testified that Mrs. Lucy Magee tried to get her husband to do what Mr. Burt, the Claim Agent, wanted him to do.

The financial condition of appellant and her family became so desperate that her pastor called on her husband and advised him that he should do something about collecting for his injury from the Railroad and contacted an attorney for Mr. Martin.

When it became apparent to Mrs. Martin that her husband would not make an effort to collect compensation for his injury, she filed an application asking the chancery court to appoint a guardian for him.

About this time, it became necessary to again take Mr. Martin to the hospital, and he was taken to the

I. C. R. R. Hospital in New Orleans, Louisiana. Mrs. Martin obtained a job at the Charity Hospital in New Orleans in order to be near her husband. Dr. Celli called her on one occasion and advised her that Mr. Burt was taking her husband out of the hospital. She rushed to the hospital and found Mr. Burt and another man were in the process of moving her husband out of the hospital. The second man was armed with a pistol. She claimed that they would not advise her where they were taking him, but this is denied by witnesses for defendants. She got on the train that night and was so upset that she went to the hospital in Durant. Mr. Martin went to Yazoo City where the guardianship proceedings were scheduled to have been held, but Mrs. Martin's attorney withdrew the papers. Upon his return to the hospital in New Orleans, Mrs. Martin and her sons were not permitted to visit him, and she claimed it was at the instance of the agents of the Railroad. After Roy Martin left the hospital, he went to live with his sister and did not return to his home in Durant. Mrs. Martin testified that her husband advised her that it was necessary for him to get a divorce in order to settle with the Railroad, that in fact her husband did file a suit against her but his petition was withdrawn, and later she filed a suit for divorce. A divorce decree was awarded her on January 14, 1958. The Railroad settled with Roy Martin on July 16, 1957. He died December 29, 1958, and shortly after his death, his sister, Mrs. Hosea Young, offered for probate an alleged will of Roy Martin's, giving all of his property to his sisters. This will was contested and set aside as being obtained by undue influence and is cited in the foregoing case of Young v. Martin, supra.

Testimony of appellant is corroborated in many instances by witnesses and hospital records. Defendants, however, denied the implications placed upon their activities by Mrs. Roy Martin, and denied every act in

detail, wherein malice was mentioned or inferred, by the testimony offered in behalf of appellant. Rodger Burt, Claim Agent for the Railroad, testified with reference to his visits to the hospital. He denied he attempted to prevent Mrs. Martin from employing an attorney. He testified that Mrs. Martin said she would sue the Railroad; that he carried Roy Martin to Yazoo City at his instance and request, and that he had nothing to do with the decision of Mr. Martin to file divorce proceedings. He also testified that he did not settle with Mr. Martin until he had employed an attorney to represent him in the settlement of his claim. He denied having anything to do with the notice posted on the bulletin board at the I. C. R. R. Hospital in New Orleans, barring visits by Mrs. Martin and their sons. Dr. Celli produced a letter in the handwriting of Roy Martin requesting him to refuse his wife and sons permission to visit him. He testified that this was the notice posted on the nurse's bulletin board.

The brothers and sisters of Roy Martin testified in detail with reference to each instance or occasion pointed out by Mrs. Martin to show alienation of affections of her husband. A letter written by Roy J. Martin, Sr. to W. E. Martin, and his wife, Maudie May, was introduced in evidence, wherein he claimed that she had spent nearly $9,000 of his money and that she was trying to get him to sign papers with a lawyer to sue the Railroad Company against his wishes. Mrs. W. L. Douglas testified that her brother asked her to pay his burial insurance and that she did get his policies and pay it. W. L. Douglas testified that the reason that members of the family drove Roy Martin about was because he could not drive a car. Each incident testified to by Mrs. Martin was also an incident set out in the opinion in the aforementioned Young v. Martin case, supra, and specifically denied by members of the family, or admitted and explained.

Dr. John G. Caden testified that Mrs. Martin offered him money to testify in her behalf. She took the witness stand, in rebuttal, and introduced records showing that she paid the insurance premiums claimed to have been paid by Mrs. W. L. Douglas. She admitted that she offered money to the doctor to testify but said that she thought, in order to obtain professional testimony, that it was necessary to pay professional men a fee to testify in a case.

We find that the jury was properly instructed, that there were no errors committed during the trial, and that the case was properly submitted to the jury. A verdict was returned to favor of defendants.

After a long and careful examination of this voluminous record, we are of the opinion that this was a typical case for the jury, and that all of the issues were properly submitted to it. The theory of appellant in the trial of the case in the court below was that defendants conspired together to alienate the affections of her husband so as to reach a settlement with the Railroad Company, that this was effected, and the settlement was had, favorable to the Railroad Company. The theory of defendants was that Mrs. Roy Martin desired to bring suit against the Railroad Company and that she continuously "nagged" her husband to employ attorneys, that she talked to attorneys in an effort to get him to bring suit, and that he, of his own volition, refused to permit suit to be brought against the Company; that when Mrs. Martin filed a petition in the chancery court to have a guardian for her husband, Mr. Martin became incensed and filed a bill for divorce against his wife.

(Hn 1) The jury accepted the theory of defendants in this case, and we are of the opinion that the verdict is supported by the evidence. (Hn 2) In order to sustain a suit for alienation of affections, it must appear that there has been a direct interference on the part of defendant sufficient to satisfy the jury of alienation of

affections, **(Hn 3)** and the burden of proof is on plaintiff to establish such interference. See Stanton v. Cox, 162 Miss. 438, 139 So. 458.

**(Hn 4)** Testimony relied upon by appellant to establish alienation of affections was in direct conflict with the testimony of the various defendants, and it is within the province of the trial jury to determine the weight and worth of the testimony **(Hn 5)** to pass upon contradictions in the evidence, and credibility of witnesses. See Johnson v. Richardson, 234 Miss. 849, 108 So. 2d 194; I. C. R. R. Company v. Harrison, et ux, 224 Miss. 331, 80 So. 2d 23; Brown-Miller Company v. Howell, 224 Miss. 136, 79 So. 2d 818; Delta Chevrolet Company v. Waid, 211 Miss. 256, 51 So. 2d 443.

**(Hn 6)** It is well-settled that the verdict of a jury, based upon conflicting evidence, will not be set aside unless the evidence so strongly preponderates against the verdict as to indicate that the jury was moved by passion, prejudice or some other improper influence. See St. Louis and S. F. R. Company v. Mrs. Ida Moore, et al., 101 Miss. 768, 58 So. 471; Sansing v. Thomas, 211 Miss. 727, 52 So. 2d 478; Kelly v. State, 239 Miss. 705, 124 So. 2d 844; Y. D. Lumber Co., Inc. v. Aycock, et al., 40 So. 2d 551 (Miss. 1949); Magnolia Textiles, Inc. v. Gillis, 206 Miss. 797, 41 So. 2d 6; Westbrook v. Corneil, 199 Miss. 118, 23 So. 2d 753.

We find no error in the trial of this case, and since it is a jury question and it found for the defendants, we are of the opinion that the verdict of the jury should be, and is, hereby affirmed.

Affirmed.

*McGehee, C. J., and Kyle, Ethridge and Gillespie, JJ.,* concur.