381 So.2d 601 (1980)
ASTRO TRANSPORT, INC.
v.
Zequiel MONTEZ.
No. 51736.
Supreme Court of Mississippi.
March 5, 1980.
Mitchell, Eskridge, Voge, Clayton & Beasley, Claude F. Clayton, Jr., Tupelo, for appellant.
Mitchell, McNutt, Bush, Lagrone & Sams, Guy Mitchell, III, Tupelo, for appellee.
Before PATTERSON, BROOM and COFER, JJ.
*603 BROOM, Justice, for the Court:
Tort action for property damage resulting from a traffic accident is the nature of this suit tried in the Circuit Court of Lee County. Astro Transport, Inc., the plaintiff (Astro herein) sued Zequiel Montez alleging that Montez's negligence in operating a motor vehicle caused damages to Astro's Kenworth truck which was driven by one Lindsey. From a verdict and judgment for defendant Montez, plaintiff Astro appeals contending: (1) the evidence does not support the verdict, (2) erroneous evidentiary rulings were made, and (3) faulty jury instructions were given. We reverse.
The accident occurred November 12, 1975 on Interstate 40 (I-40 herein) near Biscoe, Arkansas. En route to Amarillo, Texas, Lindsey was driving Astro's truck westerly on I-40 when the truck came in contact with Montez's truck which Montez had parked off the travelled portion of I-40 on its "right-hand shoulder or southern side."[1] Astro alleged that Montez negligently
"[S]uddenly and without warning pulled his vehicle from the shoulder into the right-hand westbound lane of traffic in which plaintiff's driver was proceeding."
Other allegations are that Montez negligently: stopped in the emergency lane when there was no emergency, drove his vehicle for more than ten hours contrary to Federal Motor Carrier Safety Regulations, failed to maintain a proper lookout for other vehicles, and failed to yield the right of way to Lindsey.
Trial was according to Arkansas substantive law, and Mississippi (forum state) procedural law.
Montez cross-appealed and contends here that the lower court "erred in failing to sustain the motion to dismiss." In his motion filed below Montez contended that in a previous trial of a companion case in the Circuit Court of Lee County, Mississippi (Montez v. Lindsey and Lucky Star Industries, Cause Number 14,394), a judicial determination was made by the court that Astro's driver Lindsey was more than fifty percent at fault in the accident. Therefore, according to Montez, under the Arkansas Comparative Negligence Law, Lindsey's negligence was imputed to Astro who was therefore "barred and collaterally estopped from bringing this present action."
The record discloses that the truck driven by Lindsey was owned by Astro who leased it to another corporation, Lucky Star Industries, Inc. Lucky Star employed Lindsey, driver of Astro's truck at the time of the accident. Montez in his brief argues that the two corporations Astro and Lucky Star are so closely related and interwoven that the corporate veil of Astro should be "pierced and the negligence of Lindsey imputed to Astro." According to Montez,
"It was shown on a hearing on the motion to dismiss from the testimony of Mr. L.E. Gibens that both companies shared officers, stockholders, directors and that the stock of Astro Transport, Inc. was owned totally by a trust which also owned stock in Lucky Star Industries and the beneficiaries of the trust being the same persons who are officers, directors and stockholders of the other corporation, Lucky Star, Inc. In addition, it was also shown that the only business of Astro Transport at the time of the accident was to haul blue jeans manufactured by Lucky Star Industries, Inc. Additionally, the officers and directors of Astro served without compensation and that with one exception they were all salaried by Lucky Star Industries, and that the same people set policy for both corporations."
Argument is that trial of the companion case resulted in a verdict adverse to Lucky Star which according to Montez in effect was an adjudication against Astro, the closely related corporation, and in favor of Montez who in the prior litigation was awarded a $5,000 jury verdict "for his damages against Lucky Star ... and ... employee and agent Benjamin Douglas Lindsey".
*604 After considering the matter, the trial judge heard argument and a limited amount of evidence on Montez's motion to dismiss. Then he ruled:
I just don't believe that there is quite enough identity between Astro Transport and Lucky Star Industries to warrant the Court in sustaining the motion to dismiss ... However, I don't believe there is sufficient for me to sustain a motion to dismiss."
Astro's view on Montez's motion to dismiss is that because at trial Montez (who raised the issue of res judicata) did not offer the pleadings and final judgment from the prior case, there is nothing before us to establish identity of: parties, subject matter, causes of action or issues. Pate v. Evans, 232 Miss. 6, 97 So.2d 737 (1957) held that one who defends on the theory of res judicata has the burden to prove such a defense. In Pate, we said:
"The existence and contents of a judgment, sought to be made available as a basis for the application of this doctrine, must be proved by offering in evidence the record, or a copy of it. Appellants did not do this. The reason for this requirement is that the plea must clearly show the issues and questions involved in the former proceedings, so as to demonstrate that those now presented existed in the former case and were adjudicated. Viator v. Stone, 201 Miss. 487, 29 So.2d 274 (1947). (232 Miss. at 15, 97 So.2d at 739).
Neither the abstract nor the record reveals that Montez offered into evidence the pleadings or the final judgment in the prior case in which he contends that the issues now before us were previously litigated. Montez's failure at the lower level to plead and prove his defense of res judicata by offering into evidence either the pleadings or judgment of the companion case leaves his cross-appeal without merit.
On direct appeal, Astro's first argument is that the trial court "erred in striking portions of the deposition of the Arkansas Highway Patrolman on the basis that he was not certain about" to whom he was talking. The pre-trial deposition, taken at Montez's instance, was offered into evidence as part of Montez's case in chief. It appears that Montez was seeking to admit into evidence testimony of Patrolman Billy Davidson insofar as the testimony related to physical evidence concerning the scene of the collision. Examples of testimony which Montez sought to get to the jury by means of Davidson's deposition were Davidson's recollection as to the debris, distances, location of the vehicles and the like. Montez succeeded in having excluded the patrolman's testimony (contained in the deposition) as to what the patrolman heard Montez say at the scene of the accident after the patrolman arrived. According to his deposition, what the patrolman heard Montez say at the scene was different from and in contradiction of Montez's testimony at trial, and would corroborate the testimony of Lindsey, the driver of Astro's truck. Stated differently, if Davidson's deposition were admitted into evidence in its entirety, it would show that Montez stated one thing to Davidson before consulting any attorney, and then at trial Montez's version of the accident was substantially different.
Cross-examination of Davidson by Astro's attorney was, of course, a part of the entire deposition and during such cross-examination, the following exchange occurred:
"Q. Now, when you arrived at the scene, you talked to Zequiel Montez and another Mexican, I understand?
A. Yes, sir.
Q. Now, did you talk to Zequiel Montez about how the accident occurred?
MR. MITCHELL:
Let the record show that I have got a continuing objection about any conversations that were had unless it can be shown that all parties were present.
A. I couldn't swear which one I talked to. I don't know.
MR. CLAYTON:
Q. Let me ask you this. You talked to the driver of the Montez truck after the accident, didn't you?

*605 A. I believe so. But I'm not positive on it. I talked to one of them that was in the vehicle. I couldn't say. I don't remember. I'm sure I did, but  I would have had to gotten [sic] his driver's license from him. I'm sure I talked to him.
Q. You talked to a male Mexican who was in the vehicle involved in the accident?
A. Yes, sir."
Because of Davidson's equivocation as to which Mexican, Montez or Nino, he talked to at the accident scene, prior to trial of this case on the merits, Montez moved in limine for exclusion (as hearsay) of any cross-examination testimony in the deposition relating to what Zequiel Montez was said to have told Patrolman Davidson.
It is true that Patrolman Davidson's deposition testimony (offered in behalf of Montez) at issue here, was equivocal as to whether Davidson at the scene of the accident talked to defendant Montez or to Jose Nino, driver of a truck just ahead of Montez as they stopped on the I-40 shoulder. Scrutiny of the deposition reveals the following: Davidson did state originally that he had talked to Zequiel Montez and another Mexican. In testimony subsequent to that indicating uncertainty about the identity of the person to whom he was talking, Davidson became specific in response to questions as to what "Zequiel Montez" told him, and also stated that he had talked to a male Mexican who was in the vehicle involved in the accident. It was conclusively shown in the trial below that Montez was the only male Mexican in the vehicle involved in the collision. Except for Jose Nino, no other male Mexican was at the scene. At one point in his testimony, a question propounded to Patrolman Davidson and his answer were:
"Q. Did Mr. Zequiel Montez tell you that he had stopped on the shoulder prior to the collision?
A. Yes, sir."
Further, on re-direct, Montez's attorney did not explore this doubt or uncertainty in Davidson's mind. Montez's attorney himself asked Davidson a question relating to "the Mexican-American who was the driver of the Montez vehicle."
The view of appellee Montez is that "the trial judge simply determined that the testimony concerning the conversation was tainted by the original statement of the patrolman that he could not under oath identify the party making the alleged statement." Montez's brief further states that:
"Before a purported statement of a party is admissible against him, it is necessary to identify the declarant as the party making statement and admissions and declarations offered in evidence should be identified precisely and proven clearly."
[29 Am.Jur.2d, Evidence, § 598 (1967)].
Omitted from the foregoing authority is a meaningful line. In actuality, 29 Am.Jur.2d, Evidence, § 598 (1967) states in pertinent part:
"In any event, before a purported statement of a party is admissible against him, it is necessary to identify the declarant as the party, although this may be done by either direct or circumstantial evidence.

Admissions and declarations offered in evidence should be identified precisely and proved clearly." (Emphasis added).
The authority relied upon by Montez makes it clear that the identity of the declarant may be established by circumstantial evidence. It is clear to us that when Patrolman Davidson made the statement that he could not swear which Mexican he was talking to, the substance of his statement was that he was not familiar with their names. Nevertheless, his testimony establishes his positive identification of the person he was talking to as "the male Mexican driver of the Montez vehicle." The equivocation aspect of Davidson's testimony relative to the identity of the person to whom he was talking goes to the weight and worth of his testimony rather than to its admissibility. Under our rule, resolution of the weight and credibility to be accorded Davidson's testimony was for the jury (not the trial judge) to resolve. The New Orleans, Jackson *606 and Great Northern Railroad Company v. Echols, 54 Miss. 264 (1876); Martin v. Illinois Central Railroad Co., et al., 246 Miss. 102, 149 So.2d 344 (1963).
It is not without significance that the controversial deposition was taken at Montez's instance; he sought its introduction as a portion of his case in chief; and the defendant Montez and Jose Nino were present in court, and both testified. Both stated that they had never made statements to the highway patrolman that were attributed to one or the other of them by Patrolman Davidson. In such a posture of the record, we hold that Patrolman Davidson's identification of Montez as the declarant of certain statements made to Davidson would go to the weight of such evidence  not to its admissibility.
As is often true of litigants in trial, Montez's and Lindsey's testimony was highly conflicting and contradictory. Noteworthy is the fact that Montez's recollection of events as revealed to Patrolman Davidson (reflected in Davidson's deposition) were in several respects consistent with Lindsey's (Lucky Star's driver) version of the accident. According to Davidson's deposition, Montez had told him that he had been parked approximately 65 feet from the scene of the accident but during the trial Montez testified that he had travelled approximately a mile. According to the deposition, Montez had told Patrolman Davidson that when he pulled out into the lane in which Lindsey was travelling he (Montez) had just got straightened out and there was no emergency. These statements were contradictory to and not consistent with Montez's testimony at the trial and therefore were properly admissible into evidence.
Upon this posture of the record, we think that the portions of Davidson's testimony (contained in his deposition) which were excluded should have gone to the jury along with the remainder of the deposition. Resolution of the conflicts and inconsistencies was an appropriate jury function; accordingly we hold that exclusion of parts of the deposition constituted reversible error.
The second proposition argued by the appellant Astro is that "the court erred in not granting the peremptory instruction requested by the plaintiff." After Astro filed its original declaration in this matter, Montez answered denying all of the allegations of negligence contained in the declaration. Subsequently, with leave of the court, Astro filed an amended declaration, alleging two more acts of negligence on the part of Montez. These additional acts of negligence were charged in the amended declaration, but the amended declaration did not allege that the collision was caused by or proximately resulted from the additional acts of negligence. Montez did not file an additional answer, therefore leaving undenied the two additional acts of negligence as alleged in the amended declaration.
Now Astro says that under Mississippi Code Annotated § 11-7-59(2) (1972), it was entitled to a peremptory instruction for failure of Montez to file any answer to the amended declaration. Although we think under good practice Montez should have filed an additional answer, upon the posture of the record before us, we do not believe on this ground Astro was entitled to a peremptory instruction. Montez's original answer denied all acts of negligence charged against him in the original declaration; he affirmatively charged that the accident in question was the result of the acts of negligence committed by Astro's driver Lindsey. When the cause was called for trial, Astro did not in any way challenge Montez's right to put on proof for failure to answer the amended declaration; Astro chose to put on its case. After Astro rested its case then Montez put on his proof and after both sides rested Astro moved for a peremptory instruction based upon Montez's failure to deny in writing the allegations of the amended declaration. Montez relies upon our statute of jeofails, Mississippi Code Annotated § 11-7-167 (1972), which in effect says that "any misleading, insufficient pleading," etc. will not be grounds for a *607 judgment on the pleadings. We are unpersuaded because we do not believe the statute of jeofails is applicable here. Nevertheless, upon the posture of the pleadings and record where Astro made no challenge to the right of Montez to put on his proof, and after waiting until Montez put on his proof, we do not believe the trial court committed reversible error by failing to grant Astro a peremptory instruction.
Another argument advanced by Astro is its contention that the court erred "in instructing the jury that Benjamin Lindsey had a duty to avoid a collision with the defendant's vehicle without regard to the conduct of the defendant." Specifically, Astro argues that Instruction D-1 placed no burden upon Montez to "drive in accordance with the rules of the road." Appellee, on the other hand, contends that the language in the instruction that the Montez vehicle was "properly on the highway proceeding in the outside westbound lane of Interstate 40" sufficiently instructed the jury that Montez was duty bound to operate his vehicle in accordance with the rules of the road. Astro contends that it is possible to be "properly" on the road without obeying the rules of the road. At retrial, instructions in this regard should not include the language "properly on the road"  rather the instruction's language should be something like "drive in accordance with the rules of the road." Nevertheless, we do not believe the deficiency, if any, in the instruction complained of amounts to reversible error. Other instructions considered in their entirety adequately instructed the jury.
Last argument made by Astro is the contention that the jury verdict was against the overwhelming weight of the credible evidence. Although the case is being reversed and remanded on other grounds, we deem it appropriate to note that in our opinion there was sufficient evidence to create a jury issue.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING, and COFER, JJ., concur.
NOTES
[1] from the original declaration. The right-hand shoulder would be the North side of the west-bound lanes.