# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CT-00188-SCT

*BRANDI'S HOPE COMMUNITY SERVICES, LLC,*
*WANDA KEITH AND DANNY O. COWART*

*v.*

*HEATHER DENICE WALTERS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2022 |
| TRIAL JUDGE: | HON. JOHN R. WHITE |
| TRIAL COURT ATTORNEYS: | JIM WAIDE |
| | RACHEL PIERCE WAIDE |
| | RON L. WOODRUFF |
| | MARK NOLAN HALBERT |
| | CYNTHIA TRANELL LEE |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK NOLAN HALBERT |
| | BRANDI SOPER DOSS |
| ATTORNEY FOR APPELLEE: | JIM WAIDE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENTS OF THE COUNTY COURT OF LEE COUNTY AND THE CIRCUIT COURT OF LEE COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART. THE CASE IS REMANDED TO THE COUNTY COURT OF LEE COUNTY - 05/09/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Heather Walters was terminated from her job at Brandi's Hope Community Services.

The County Court of Lee County found the termination eligible for legal recourse under the public policy exception established in *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993). The Circuit Court of Lee County affirmed on appeal, but the Court of Appeals reversed and rendered, finding a conflict between *McArn* and Mississippi Code Section 43-47-37. *Brandi's Hope Cmty. Servs., LLC v. Walters*, No. 2022-CA-00188-COA, 2023 WL 4071594, at *16 (¶ 84) (Miss. Ct. App. June 20, 2023).

¶2. Walters petitioned the Court for certiorari to answer two questions:

(1) Whether the Mississippi Vulnerable Persons Act modified this Court's decision in *McArn*.

(2) Whether the disclosure of a photograph of a resident of a personal care home for the purpose of documentation of abuse of that resident violates the privacy rule of the Health Insurance Portability and Accountability Act.

¶3. Having determined that there is no conflict between our holding in *McArn* and Section 43-47-37, we reverse that portion of the judgment of the Court of Appeals. The judgments of the County and Circuit Court of Lee County are affirmed in part and reversed in part. The case is remanded to the county court for further proceedings. Because we find the first question dispositive, we decline to reach the second question.

## FACTS

¶4. On the morning of March 16, 2017, Heather Walters arrived to work her shift at Brandi's Hope Community Services, LLC. Brandi's Hope is a long-term-care facility for people with intellectual and developmental disabilities. Walters was employed as a Direct Support Professional. The role of a Direct Support Professional is to assist the residents with

2

their daily needs.

¶5.     John (not the patient's real name) is a resident in his early twenties who suffers from cerebral palsy and mental retardation. He has the mental capacity of a five- or six-year-old. When John woke up on the morning of March 16, Walters noticed that his face was bruised and that he had black eyes. John said that Toney Burns was the person who had hit him. Burns was another Direct Support Professional employed by Brandi's Hope.

¶6.     Walters called her immediate supervisor, Caleb Texidora, and site manager, Wanda Keith, to report the incident per company policy. Neither answered. She then took a picture of John's injured face with her personal cell phone and texted it to Texidora and Keith, along with a message describing what had occurred. The texts did not go through. Later that morning, Keith returned Walter's call and told her that she would look into it.

¶7.     Walters finished her shift at 8:00 a.m. and left the facility. She went to Frankie Crump's house. Crump was a friend and former coworker from Brandi's Hope. Walters told her about the incident and asked if there was anyone else that she needed to report to. Additionally, Walters allowed Crump to take a picture of the picture of John she had on her phone. Walters said she did so because she was having trouble getting the picture to send through text messages on her phone.

¶8.     Keith investigated the incident over the next two days. As part of her investigation, she interviewed all the witnesses. When she interviewed Walters, Walters told her that she did not "take a picture of John and send it to a former staff." As part of her training, Walters had been told that taking a picture of residents was against company policy and violated

3

HIPAA regulations.

¶9.     Danny Cowart is the founder and CEO of Brandi's Hope.  On March 20, after reviewing Keith's investigation, Cowart terminated Walters for "violation of company policy."  At trial, Cowart testified that he based his decision to terminate Walters on her sharing the picture with Crump and later denying it.

¶10.    Walters filed suit in the County Court of Lee County against Brandi's Hope and Cowart for retaliatory discharge and malicious interference with employment, respectively.  At the close of trial, defendants moved for directed verdicts, and the court denied them.  The jury returned a verdict finding both Brandi's Hope and Cowart liable and awarding $100,000 in compensatory damages.  The damages were for "loss of income" and "damages for mental anguish, stress, or loss of enjoyment of life."

¶11.    The defendants appealed the verdict first to the Lee County Circuit Court; the circuit court affirmed.  Afterwards, the Court of Appeals reversed and rendered, holding that the defendants were entitled to directed verdicts in their favor.  *Walters*, 2023 WL 4071594, at *16 (¶ 84).  The Court of Appeals further held that the abuse reporting procedures included in the Mississippi Vulnerable Persons Act, codified in Mississippi Code Section 43-47-37, and our holding in *McArn*, 626 So. 2d 603, were in conflict, and therefore Walters was ineligible for the public policy exception to at-will employment discussed in *McArn*. *Walters*, 2023 WL 4071594, at *12 (¶ 61).  The court also held that there was insufficient evidence to support the malicious-interference-with-employment verdict against Cowart. *Id.* at *16 (¶ 83).

4

**STANDARD OF REVIEW**

¶12. "This Court reviews matters of law *de novo.*" ***R. P. v. State (In re Int. of J.P.)***, 151 So. 3d 204, 208 (¶ 9) (Miss. 2014). "Statutory interpretation, of course, is a matter of law." ***King v. Miss. Dep't of Child Prot. Servs. (In re Int. of E.K.)***, 249 So. 3d 377, 381 (¶ 16) (Miss. 2018) (citing ***5K Farms, Inc. v. Miss. Dep't of Revenue***, 94 So. 3d 221, 225 (¶ 14) (Miss. 2012)). "Our standard of review of a trial court's grant of a J.N.O.V., a peremptory instruction and a directed verdict is de novo[.]" ***White v. Stewman***, 932 So. 2d 27, 32 (¶ 10) (Miss. 2006)

.                                                   **ANALYSIS**

     **I.**      **Mississippi At-Will Employment and the *McArn* Exceptions**

¶13. The Court has long recognized Mississippi's at-will employment law. "[A]n agency to do particular services from time to time, to be paid for as the services are rendered, and without any agreement as to the time of its continuance, is determinable at the pleasure of either party." ***Butler v. Smith***, 35 Miss. 457, 464 (Miss. 1858). The default rule is that employers may fire employees "for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." ***McArn***, 626 So. 2d at 606 (quoting ***Shaw v. Burchfield***, 481 So. 2d 247, 253-54 (Miss. 1985)). When an employer fires an employee for a reason declared legally impermissible, that employer is liable to the employee via a claim of wrongful termination.

¶14. In *McArn*, the Court established two narrow public policy exceptions to the general rule of at-will employment. ***McArn***, 626 So. 2d at 607.

5

(1) An employee who refuses to participate in an illegal act as in ***Laws*** [***v. Aetna Finance Co.***, 667 F. Supp. 342 (N.D. Miss. 1987),] shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

***Id.*** It is in the public interest for employees to be able to refuse to commit illegal acts ordered by their employers and to report illegal acts committed by their employers without fear of being fired. The enumerated exceptions further the interest. "[I]f the state makes certain conduct illegal, it would be in the best interest of the state to encourage employees to refrain from breaking the law at the request of their employers by providing them a remedy should they be discharged for refusing to obey their employers' illegal commands." ***Laws***, 667 F. Supp. at 348 (quoting 9 A.L.R. 4th 329, 332, *superseded by* 105 A.L.R. 5th 351).

¶15. The ***McArn*** Court intended the narrow exception to apply comprehensively. The reporting employee may report the illegal actions to their "employer *or anyone else*." ***McArn***, 626 So. 2d at 607 (emphasis added). The exceptions "apply even where there is 'privately made law' governing the employment relationship, where the illegal activity either declined by the employee or reported by him affects third parties among the general public, though they are not parties to the lawsuit." ***Id.*** Once the threshold of illegal action or solicitation of illegal action is crossed, the protection provided by the narrow exception is broad.

¶16. In 1987, six years before ***McArn*** was decided, twenty-five states, including eight southern states, had public policy exceptions to their at-will employment doctrines. ***Laws***,

667 F. Supp. at 347. That number has risen to at least forty-four states since **McArn** was handed down. In the majority of the states, the public policy exceptions were created by the high court of the state. In other states, the exception was created statutorily. *See, e. g.*, Me. Rev. Stat. Ann. tit. 26, § 833; Ala. Code § 36-25-24.

¶17. The first recognized source for the concept of the doctrine of at-will employment is Horace Gray Wood's *A Treatise on the Law of Master and Servant: Covering the Relation, Duties and Liabilities of Employers and Employees* published in 1877.

> With us the rule is inflexible, that a general or indefinite hiring is prima facie a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve.

**Toussaint v. Blue Cross & Blue Shield of Mich.**, 292 N.W.2d 880, 886 (Mich. 1980) (internal quotation marks omitted) (quoting Horace G. Wood, *A Treatise on the Law of Master and Servant* § 134 (1877)).

¶18. Wood was a prolific and influential legal scholar, and the courts of the time quickly promulgated the doctrine throughout the country. The doctrine was made law by the courts. *See, e. g.*, **Carl v. Child.'s Hosp.**, 702 A.2d 159, 168 (D.C. 1997) (Ferren, J., concurring) ("Apparently no one, however, disputes the origins of the at-will doctrine: the courts, not the legislatures.") Because the doctrine of at-will employment was judicially created, the Court "has the burden and the duty of amending it to reflect social and economic changes." **Laws**, 667 F. Supp. at 347 (quoting **Sabine Pilot Serv., Inc. v. Hauck**, 687 S.W.2d 733, 735 (Tex. 1985) (Kilgarlin, J., concurring).

¶19. The *McArn* Court was on solid jurisdictional ground when it determined the public policy exceptions to our state's at-will employment doctrine, and it was in line with most of American jurisprudence at the time. The trend toward adding public policy exceptions to at-will employment schemes has only grown stronger in the courts over the years since *McArn* was decided.

## II. Mississippi Code Section 43-47-37

¶20. Six years prior to our decision in *McArn*, the Mississippi Legislature passed the Mississippi Vulnerable Adults Act. S.B. 2223, Reg. Sess., 1986 Miss. Laws ch. 468. The purpose of the statute was "to provide for protective services for vulnerable persons in Mississippi who are abused, neglected or exploited." Miss. Code Ann. § 43-47-3 (Rev. 2023). Section 43-47-37 mandates reporting of abuse or exploitation discovered in care facilities. Miss. Code Ann. § 43-47-37 (Rev. 2023).

¶21. Subsection (1) reads:

> (1)     Any person who, within the scope of his employment at a care facility as defined in Section 43-47-5(b), or in his professional or personal capacity, has knowledge of or reasonable cause to believe that any patient or resident of a care facility has been the victim of abuse, neglect or exploitation shall report immediately the abuse, neglect or exploitation.

Miss. Code Ann. § 43-47-37(1) (Rev. 2023). The statute goes on to detail who must make the report, how they must make it, and what should be in the report. Miss. Code Ann. § 43-47-37(2) to (4) (Rev. 2023). Subsection 2 requires any employee, home health agency, or other care facility to report the incident to the State Department of Health and the Attorney General's office within in a short period of time. *Id*. The statute is a clear mandate that the

8

parties "shall" report.  *Id.*

¶22.   Much like our decision in *McArn* six years later, the Legislature recognized the importance of preventing potential retaliation by employers against employees who take action in line with the public policy interests of the State but at odds with the interests of their employers.  To stave off any such potential retaliation, subsection (5)(b) was included.  Subsection (5) reads:

> (5)(a)  Any individual who, in good faith, makes a report as provided in this section or who testifies in an official proceeding regarding matters arising out of this section shall be immune from all criminal and civil liability. The immunity granted under this subsection shall not apply to any suspect or perpetrator of abuse, neglect or exploitation of any vulnerable person, or of any other criminal act under any statute of this state or municipal ordinance defining any act as a crime or misdemeanor.
>
> (b) No person shall terminate from employment, demote, reject for promotion or otherwise sanction, punish or retaliate against any individual who, in good faith, makes a report as provided in this section or who testifies in any official proceeding regarding matters arising out of this section.

Miss. Code Ann. § 43-47-37(5)(a), (b) (Rev. 2023).

¶23.   The Mississippi Vulnerable Adults Act's goal was to protect citizens who cannot protect themselves from abuse. Section 43-47-37 is an affirmative mandate instructing anyone in the business of caring for vulnerable persons to report any abuse of which they become aware.  Subsection 5(b) is designed to ensure that employers cannot punish their employees for complying with the statute's mandate.

### III.    Interplay Between *McArn* and Section 43-47-37(5)(b)

¶24.   The Court of Appeals evaluated the relationship between the two laws and determined that the immunity provisions in Section 43-47-37(5)(b) supersede the Court's holding in

9

*McArn*. So long as it is constitutionally sound, when a statute conflicts with the Court's holding, the Court's holding must yield to the statute. However, our holding in *McArn* and Section 43-47-37(5)(b) are not in conflict.

¶25. When interpreting a statute, the Court has long followed the canon that statutes should be interpreted so as not to disturb the common law, absent explicit indication to the contrary. *Sanders v. Neely*, 197 Miss. 66, 19 So. 2d 424, 427 (1944) ("Statutes are not to be understood as affecting any change in the common law beyond that which is clearly indicated, either by express terms or by necessary implication from the language used[.]" (quoting 59 C. J. § 1040)). Thus, when the Court of Appeals interpreted the two laws, it should have first sought to find harmony between them if possible.

¶26. Both the purpose and the implementation of *McArn* and Section 43-47-37 are different. The statute is an affirmative mandate that orders employees to report abuse, neglect, or exploitation and gives them protection from retaliatory discharge based on the reporting. Miss. Code Ann. § 43-47-37. *McArn* is a protective response to a wrongful discharge for refusing to partake in or reporting on illegal activity. *McArn*, 626 So. 2d at 607. There will be times when the two laws overlap somewhat, but there will also be times when the statute applies but *McArn* does not and *vice versa*. A case in which a vulnerable person is neglected, but not criminally so, would qualify for the immunity from retaliatory discharge under Section 43-47-37 but not under *McArn*. *McArn*'s exceptions require illegal acts or requests. The public policy behind the exceptions' implementation is based on the goal of preventing criminality. When the common law and statutes overlap but do not

10

contradict, there is no conflict.

¶27. Failure to comply with the procedures in Section 43-47-37 would disqualify a person from the protection offered by subsection (5)(b); however, failure to follow the procedures would have no bearing on a person's eligibility for protection under *McArn*. The Court of Appeals' construction of the two laws could lead to scenarios in which illegal activity is reported to a police officer, for example, and the reporting employee is fired because of the report but has no recourse under *McArn* because the employee failed to follow the reporting procedures in Section 43-47-37. Scenarios like the one described above would have the same disincentivizing effect that the public policy exception in *McArn* seeks to protect against: employees could be fired for reporting their employers' illegal actions.

¶28. Walters did not report "to the department [of health] and the Medicaid Fraud Control Unit of the Attorney General's office" as directed by the statute. Miss. Code Ann. § 43-47-37(2), (4). She did not follow the content requirements of Mississippi Code Section 43-47-37(3) (Rev. 2023). The termination protection found in the statute is contingent on the reporting person "who, in good faith, makes a report *as provided in this section* . . . ." Miss. Code Ann. § 43-47-37(5)(b). Failing to report according to the terms of the statute disqualified Walters from protection *under the statute* but not from protection under *McArn*.

¶29. The Court of Appeals based its decision to the contrary, in part, on our holding in *Swindol v. Aurora Flight Sciences Corp.*, 194 So. 3d 847, 854 (¶ 20) (Miss. 2016). In *Swindol*, we certified to the Fifth Circuit that the express prohibition against employers firing employees for safely storing firearms in their car while at work, found in Mississippi Code

Section 45-9-55 (Rev. 2015), created a cause for wrongful discharge against employers who fire their employees in contravention of the statute. *Swindol*, 194 So. 3d at 855 (¶ 24). The Court of Appeals correctly noted that we "reasoned that by enacting a statutory restriction on employers, the Mississippi Legislature 'independently declared via [S]ection 45-9-55 that terminating an employee for having a firearm inside his locked vehicle is legally impermissible.'" *Walters*, 2023 WL 4071594, at *11 (¶ 56) (quoting *Swindol*, 194 So. 3d at 854 (¶ 20)). It then went on to state that we "explicitly did not extend *McArn* to recognize an additional judicial exception to employment-at-will where there was already a statutory exception."[1] *Id.* (¶ 57) (citing *Swindol*, 194 So. 3d at 854 (¶ 16)). The Court of Appeals reasoned that the fact that we did not invoke *McArn* public policy protections in *Swindol* meant that any zone in which the Legislature provides protection against retaliatory discharge is ineligible for *McArn* protections. One does not necessarily follow the other. In *Swindol* we held that there was no *need* to "judicially graft another 'exception' to the employment-at-will doctrine." *Swindol*, 194 So. 3d at 852 (¶ 16). The lack of a need to create a new exception because the legislature already provided a source for recourse does not equate to

---

[1]Paragraph 16 of *Swindol* reads:

> Both the parties and the district court framed the issue as whether this Court should judicially graft another "exception" to the employment-at-will doctrine. But we need take no such action here, because the Legislature already has. In short, we find that "express legislative action" and "state law prohibitions" exist in this case. Stated differently, we find that the Legislature has declared it "legally impermissible" for an employer to terminate an employee for having a firearm inside his locked vehicle on company property.

*Swindol*, 194 So. 3d at 852–53 (¶ 16).

12

preclusion of application of the existing exceptions in all other scenarios.

¶30. There should be no conflation of the different exceptions to Mississippi's at-will employment scheme. We have long held that "reasons independently declared legally impermissible" provide exceptions to the scheme. *Shaw*, 481 So. 2d at 254; *Miss. Empl. Sec. Comm'n v. Phila. Mun. Separate Sch. Dist.*, 437 So. 2d 388, 397 (Miss. 1983). *McArn* established the public policy exceptions to the scheme. In *Swindol*, we wrote: "Employers may not fire employees for one of the public-policy reasons detailed in *McArn*, nor may they fire employees for reasons 'independently declared legally impermissible.'" *Swindol*, 194 So. 3d at 852 (¶ 14). The two different vehicles for wrongful discharge claims exist independent of each other. The legally impermissible exceptions exist alongside and in concert with the public policy exceptions from *McArn*. They are two separate paths to legitimate claims for wrongful termination.

### IV. Walters was eligible to claim wrongful termination under *McArn*.

¶31. *McArn*'s exception for reporting illegal activity of an employer applies to Walters: "(2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn*, 626 So. 2d at 607. The elements required to be met in order to bring a claim under the second *McArn* exception can be stated: (1) plaintiff was an employee of the defendant, (2) an illegal act by the employer, (3) plaintiff was terminated because they reported the illegal act of the employer.

¶32. We have held that being terminated for reporting the illegal acts of a co-employee

qualifies a plaintiff for the *McArn* exception. In *DeCarlo v. Bonus Stores*, *Inc.*, No. CIV.A. 2:03CV11-KS-J, 2006 WL 1328890, at *6 (S.D. Miss. May 12, 2006), *aff'd in part, vacated in part, remanded*, 289 F. App'x 735 (5th Cir. 2008), the United States District Court for the Southern District of Mississippi was faced with the question of whether the reporting of illegal activity by a coemployee, which was not attributable to the employer itself, would still qualify for the *McArn* exception. *Id.* The district court held that it did not, stating: "[t]he court finds that to invoke the protections of McArn, an employee who is allegedly terminated for reporting illegal acts must have been reporting the illegal acts of his employer as opposed to discrete acts of a co-employee, not attributable to the employer." *Id.* On appeal, the United States Court of Appeals for the Fifth Circuit certified the question to us for clarification.

¶33. In *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 352 (¶ 1) (Miss. 2008) (internal quotation marks omitted), we answered the following question from the Fifth Circuit, "Whether the laws of Mississippi permit a retaliatory discharge claim for discharge in retaliation for reporting a co-employee's illegal acts that relate to the employer's business?" Upon review of our decision in *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539 (Miss. 1996), we determined that the Court had already held in the affirmative. We certified to the Fifth Circuit that: "the laws of Mississippi as interpreted in *McArn* and *Willard I*, permit a retaliatory discharge claim for discharge in retaliation for reporting a co-employee's illegal acts that relate to the employer's business." *DeCarlo*, 989 So. 2d at 357 (¶ 18) (footnote omitted).

14

¶34. It is undisputed that Walters was an employee of Brandi's Hope. The illegal act of assault on John by Brandi's Hope employee Burns would qualify as an illegal act eligible for *McArn* exception under *DeCarlo*. The final question that remains is whether Walters was fired *because* she reported the illegal act.

¶35. Brandi's Hope claims that Walters was fired for violation of company policy. Walters claims that she was fired because she reported John's abuse. The intent behind Walters's termination is a question of fact for the jury to determine, and we will only "disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Dependable Abrasives, Inc. v. Pierce*, 156 So. 3d 891, 895 (¶12) (Miss. 2015) (quoting *Johnson v. St. Dominics–Jackson Mem'l Hosp.*, 967 So. 2d 20, 23 (¶ 8) (Miss. 2007)). "It is the province of the jury to determine the weight and worth of testimony, and the credibility of the witness." *Indep. Life & Acc. Ins. Co. v. Mullins*, 252 Miss. 644, 173 So. 2d 663, 665 (1965) (citing *Martin v. Ill. Cent. R. R. Co.*, 246 Miss. 102, 149 So. 2d 344 (1963)).

¶36. The jury in the case *sub judice* heard the testimony and evaluated the evidence. It weighed the credibility of the witnesses and determined that Brandi's Hope terminated Walters because she reported John's abuse. The evidence is sufficient to support a jury finding a causal relationship between the termination and the report. In *Roop v. Southern Pharmaceuticals Corp.*, we cited approvingly the Fifth Circuit analysis stating: "close timing in itself could permit a jury to find against the employer [for firing the employee improperly]." *Roop v. S. Pharms. Corp.*, 188 So. 3d 1179, 1191 (¶ 46) (Miss. 2016) (citing

15

***Nero v. Indus. Molding Corp.***, 167 F.3d 921, 927-28 (5th Cir. 1999)).  Walters reported the abuse on March 16 and was fired on March 20.  Because a "'reasonable, hypothetical juror' could have returned a verdict as the jury did here[,]" we leave the verdict undisturbed.  ***Id.*** at 1191 (¶ 47) (quoting ***Henson v. Roberts***, 679 So. 2d 1041, 1045 (Miss. 1996)).

### V.     Conclusion

¶37.    The public policy exceptions set out in ***McArn*** do not conflict with the reporting protections found in Section 43-47-37(5)(b).  Walters qualified to bring a wrongful termination claim against Brandi's Hope under the exceptions; therefore, Brandi's Hope was not entitled to a directed verdict as a matter of law.  Because the evidence at trial was sufficient for a jury to determine that Brandi's Hope terminated Walters because she reported the abuse, we reverse the judgment of the Court of Appeals and reinstate the verdict of the jury.

¶38.    Because the application of the ***McArn*** exceptions is dispositive, we do not address the second question presented on certiorari regarding whether a photograph is identifiable health information under the Health Insurance Portability and Accountability Act.

¶39.    The Court of Appeals held there was insufficient evidence to support the malicious-interference-with-employment verdict against Cowart.  The holding was not on certiorari for review.  The decision of the Court of Appeals to render judgment in favor of Cowart on the malicious-interference-with-employment claim will stand.  ***Brandi's Hope***, 2023 WL 4071594, at *16 (¶ 84).

¶40.    The jury originally returned a combined verdict of $100,000 in damages against

16

Brandi's Hope and Cowart. We remand the case to the County Court of Lee County for proceedings consistent with the instant opinion.

¶41. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENTS OF THE COUNTY COURT OF LEE COUNTY AND THE CIRCUIT COURT OF LEE COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART. THE CASE IS REMANDED TO THE COUNTY COURT OF LEE COUNTY.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**